STATE OF OREGON,. RESPONDENT, *v.* THOMAS DOUGHERTY, RICHARD FLEMING AND SAMUEL NEVILLS, APPELLANTS.

INDICTMENT.—It is not the intention of the Code to abolish or dispense with any of the essential requirements of an indictment as sanctioned by the wisdom and experience of the past and determined by the well-established rules of sound reason. None of the substantial elements of a good indictment as tested by the long-established principles of criminal jurisprudence are ignored by our statute.

IDEM—DESCRIPTION OF ACTS CONSTITUTING THE CRIME.—The indictment should contain such a specification of acts and descriptive circumstances as will upon its face fix and determine the identity of the offense, and enable the Court, by an inspection of the record alone, to determine whether, admitting the truth of the specific acts charged, a thing has been done which is forbidden by law.

APPEAL from Multnomah County.

The appellants were indicted for setting up and managing a lottery for money. The indictment was in these words: "Thomas Dougherty, Richard Fleming and Samuel Nevills are accused by the Grand Jury of the county of Multnomah, by this indictment, of the crime of aiding and being concerned in setting up and managing a lottery for money, committed as follows: The said Thomas Dougherty, Richard Fleming and Samuel Nevills, on the 9th day of January, 1871, in the county of Multnomah and State of Oregon, did unlawfully and feloniously aid and were concerned in setting up a lottery for money contrary to the statute," etc.

Dougherty and Nevills, by their attorney, demurred to the indictment on the ground that the particular acts constituting the alleged crime were not set forth. The demurrer was not sustained. Nevills pleaded not guilty and demanded a separate trial. He was convicted and sentenced to pay a fine of two hundred dollars, from which judgment he appeals.

It was shown by the testimony that the game in question was decided by throwing dice—certain numbers when thrown drawing prizes.

*Theodore Burmester,* for Appellants.

The indictment contains no statement of the acts consti-

tuting the alleged offense. The Code has merely simplified the forms of pleading. It has not abolished common sense and destroyed rules that have aptly been termed "the matured wisdom of ages." The demurrer should have been sustained. (Crim. Code, §§ 69, 70, 71, 72; *United States* v. *Howard*, 1 Sawyer R. 507; *People* v. *Taylor*, 3 Denio, 91; *People* v. *Allen*, 5 Denio, 76; Wharton's Prec. 836.) The word "lottery" is not defined by law. It must be construed in the indictment in its usual acceptation. (Code, 350, § 78.) In its best and most frequent application it describes those games of chance which are conducted under the supervision or guaranty of the government and the proceeds of which are devoted to public objects. (New Am. Encyclopedia, 664; Archibald Crim. P. & P. 1000.)

Lotteries have acquired a political importance not attained by any other species of gaming, and there is no comparison, so far as the effect upon the community is concerned, between them and ordinary games of chance. (*Phalen* v. *Virginia*, 8 How. S. C. 167.) The enactment of a general law against all kinds of gaming, and in which games played with dice are particularly enumerated and prohibited (Crim. Code, ch. 9) would be unnecessary if the word "lottery" includes all schemes which chance alone determines.

*Gibbs & Upton*, for Respondent.

The legal and popular meaning of the word "lottery" coincides. It has no technical or peculiar significance. (Abbott, U. S. Rep. 278.) It is defined to be a distribution of prizes and blanks by chance—a kind of game of hazard. (Worcester's Dic.; Webster's Dic.; Bouvier's Law Dic.; Rees' Cyclopedia; Am. Encyclopedia; Smith's Wealth of Nations, B. 1, C. 10; *U. S.* v. *Olney*, 1 Abbott U. S. R. 279; 13 Barb. N. Y. 577; 7 N. Y. 228; *Bell* v. *State*, 5 Sneed, 505; 2 Bishop Cr. Law, § 946; 3 Seld. 237; 3 Denio, 88; 2 Mill. 128.) Within the meaning of our statute a raffle and lottery are one and the same thing.

By the Court, Bonham, J.:

Although the question was not argued upon appeal, yet

the transcript in this case fails to disclose what disposition was made of the demurrer filed herein; which would be error in the Court below, if the record of proceedings in that Court are complete in the transcript, unless the objections raised by the demurrer were of such character that they would be waived by pleading over. ( *Willamette Falls Co.* v. *David Smith et al.,* 1 Oregon R. 181.)

In the assignment of errors in this case, two principal questions are presented, and, in the argument of counsel for appellant, urged upon the consideration of this Court:

1. Is the indictment defective and insufficient for uncertainty, in that it does not set out the *acts* and *circumstances* constituting the offense charged?

2. Is the game or scheme which appellant was charged with "aiding and being concerned in setting up" (as disclosed by testimony in bill of exceptions) a lottery within the spirit and meaning of the Constitution and laws of this State?

For the purposes of this case, we deem it unnecessary to consider any of the questions raised, other than those embraced in the first proposition.

It is a provision of our fundamental law that, "in all criminal prosecutions the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel, to *demand the nature and cause* of the accusation against him," etc. (§ 11, Bill of Rights.) Auxiliary to the above constitutional provision, it is further provided by legislative enactment that in criminal actions the indictment *must* contain, "a statement of the *acts* constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended." (Crim. Code, § 69.)

While it clearly appears to have been the purpose of our Legislature to simplify the old common law system of criminal jurisprudence, by divesting it of many of its technical requirements, such as do not appear to affect the substantial rights of the accused, yet we do not think that it

was ever intended to abolish or dispense with any of the essential requirements of an indictment as sanctioned by the wisdom and experience of the past, and as judged and determined by the well-established rules of good reason. In our practice in *civil* cases, a pleading is insufficient and subject to demurrer if the pleader alleges conclusions of law instead of the facts from which such conclusions may be deduced.

Measured by the rules and requirements above presented, is the indictment in this case sufficient to warrant the State in arraigning the defendants and placing them upon trial for a crime? By the provisions of our Constitution the accused is entitled "to demand the *nature* and *cause* of the accusation against him," before he can lawfully be called upon to answer thereto.

By a careful analysis of the language above quoted, we find that Webster defines "nature" to mean, "the sum of qualities and attributes which make a thing what it is, as distinct from others." The same author defines "cause" to mean, "that which produces or effects a result; that from which anything proceeds and without which it would not exist." And inasmuch as an effect cannot exist without a cause, neither do we think, as a rule, that a good indictment can exist without a statement of the essential acts and circumstances which are the cause of the alleged crime or result.

The attributes and elements of the accusation or crime, whenever it is possible to do so, should be set out in the indictment, and the accused is entitled to be informed of the same by a copy of the indictment, and not be compelled to wait until the State introduces testimony to develop the acts and circumstances which are necessary to the identity of the particular crime charged. The reasons for the above requirements are apparent, and need no extended argument in their support. Chief Justice Bronson, in speaking of the indictment in a case like this (*People* v. *Taylor*, 3 Denio, 91), says: "It is a general rule that there should be such certainty of description as will identify the offense, so that the party may not be indicted for one thing

and tried for another; certainty is also required, to the end that the defendant may know what crime he is called upon to answer, that the jury may be able to deliver an intelligible verdict and the Court to render the proper judgment; and finally, that the defendant may be able to plead his conviction or acquittal in bar of another prosecution for the same offense." Judge Bronson, however, very properly further remarks: "But this rule must not be carried so far as to furnish a shield from punishment where it is plain that a crime has been committed; and, therefore, the indicting jurors are allowed to state that a particular fact not vital to the accusation is to them unknown."

Under the provisions of the section of our statute before referred to, prohibiting lotteries, there is special reason for particularity and certainty in the indictment so far as " the nature and cause of the accusation" are concerned, for the reason that the lawmaker has conferred great latitude upon the Courts in imposing the penalty for the violation of such law; the punishment ranging all the way from a fine of one hundred dollars to imprisonment in the penitentiary. It was evidently the object of the Legislature to embrace within the purview of this section all the multifarious lottery schemes in vogue, from the most magnificent, and therefore most dangerous to the welfare of society, down to the most trifling in character and results. It is with this view evidently that the penalty is graded as we find it; and where such is the case it becomes the more important to disclose in the indictment (for the reasons already stated) the nature of the particular transaction complained of.

In fact the case at bar exemplifies the necessity of the observance of the rules above stated. The indictment charges the defendants with "aiding and being concerned in setting up a lottery for *money*," whereas the evidence in the case as disclosed in the bill of exceptions shows, that if a lottery at all, it was more a lottery for property, inasmuch as, of the forty-one prizes for distribution, there was but one of money.

Although it has sometimes been claimed by members of the profession, that by our Code of Criminal Procedure no

particular skill or precision was required in framing an indictment, and that almost any form of words would be sufficient, yet we fail to see that any of the substantial elements of a good and sufficient indictment, as tested by the long and well-established principles of criminal jurisprudence, are ignored by our statute. In addition to the constitutional and statutory requirements already referred to, it is furthermore provided (Crim. Code, § 72) that "the indictment must be *direct* and *certain* as to the crime charged, and the particular *circumstances* of the crime charged, when they are necessary to constitute a complete crime." We think that, under our Code, whenever it is practicable, the indictment should contain such *specification of acts* and *descriptive circumstances* as will, upon its face, fix and determine the identity of the offense, and enable the Court, by an inspection of the record alone, to determine whether, admitting the truth of the specific acts charged, a thing has been done which is forbidden by law.

By the language of this indictment it is not possible to determine what particular unlawful act, or lottery transaction, or scheme, the defendants are charged with "aiding and being concerned in setting up." The defendants in this case might, at the time and place charged, have been engaged in half a dozen of the almost innumerable lottery schemes, from the magnificent "gift concert," in which hundreds of thousands of dollars are promised to be distributed, down to the little fifty-cent game for the sale or distribution of trinkets; and yet, from the language of this indictment, they are not furnished with the slightest intimation of what particular transaction or scheme they are charged with having aided or been concerned in setting up. By what *act* did they aid and in what *manner* were they engaged in setting up the forbidden scheme? What was the *nature* of the lottery scheme referred to? The language of the indictment answers none of these questions. How could the defendants, with any certainty, prepare for their defense? They might be prepared to defend against one transaction, while the State came into court prepared to prosecute them on another and entirely different one. Good

pleading in either criminal or civil proceedings does not subject the litigant to such uncertainty, annoyance and unnecessary expense.

Judging this indictment by the reasons, and measuring its sufficiency by the rules above stated, we think the Court below erred in not sustaining defendants' demurrer.

Judgment reversed.