Argued and submitted January 8, decisions of the Court of Appeals and judgments of the district court affirmed May 28, 1993

STATE OF OREGON,
*Respondent on Review,*

*v.*

MARRION ALLISON KING,
*Petitioner on Review.*

(DC 90-61827; CA A69804; SC S39537)

STATE OF OREGON,
*Respondent on Review,*

*v.*

JOHN GENE LAYTON,
*Petitioner on Review.*

(DC 90-60221; CA A71859; SC S39624)
(Cases Consolidated for Argument and Opinion)
852 P2d 190

Michael V. Phillips, of Johnson, Clifton, Larson & Bolin, P.C., Eugene, argued the cause and filed the petition for petitioner on review King.

Joseph A. Tripi, of Thorp, Dennett, Purdy, Golden & Jewett, P.C., Springfield, argued the cause for petitioner on review Layton. Richard L. Fredericks filed the petition.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the

responses to the petitions for review were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

CARSON, C. J.

## CARSON, C. J.

In each of these cases, consolidated for oral argument and opinion, the defendant was arrested and tried for Driving Under the Influence of Intoxicants (DUII). The prosecution presented evidence in each case that defendants were driving, that each had a blood alcohol content (BAC) exceeding .08 percent, a violation of subsection (a) of ORS 813.010(1),[1] and that the driving of each was perceptibly impaired by the ingestion of alcohol, a violation of subsection (b) of the same statute. Citing this court's decision in *State v. Boots*, 308 Or 371, 780 P2d 725 (1989),[2] that required jury unanimity on the precise statutory subsection of the aggravated murder statute that a defendant has violated, each defendant requested a jury instruction requiring the jury in his case to agree unanimously as to which of the two DUII subsections he had violated.[3] Both

---

[1] ORS 813.010(1) provides:

"(1) A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has .08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150; [or]

"(b) Is under the influence of intoxicating liquor or a controlled substance; or

"(c) Is under the influence of intoxicating liquor and a controlled substance."

[2] This court recently published an opinion clarifying the court's remand order in the Boots case, *State v. Boots*, 315 Or 572, 848 P2d 76 (1993). That opinion held that, on retrial, the trial court could instruct a jury that the defendant already had been found guilty of murder and that the jury's sole function was to determine whether there existed a statutory element (aggravating factor) that would make the defendant guilty of aggravated murder. The recent opinion did not modify the holding at issue in this case.

[3] Both cases were tried to six-person juries. Both juries were instructed that their verdicts must be unanimous. The specific instruction requested by defendant King charged:

"I instruct you that all of you must agree on the manner or theory of the state in which the crime of driving under the influence was committed, that is, your verdict must be unanimous to convict the Defendant of the crime charged and your verdict must be unanimous as to the theory, that is, was Defendant driving while under the influence as I have previously instructed you or did Defendant have a blood alcohol content greater than .08 percent by weight of alcohol at the time he was driving a vehicle."

The instruction requested by defendant Layton was longer but similar. It contained this statement:

"[I]n order to convict the defendant of Driving Under the Influence of Intoxicants all six of you must agree that the prosecution has proof beyond a

trial courts declined to give an instruction based on *Boots*. Defendants were convicted, and each appealed.

1.      The Court of Appeals affirmed, respectively, in *State v. King*, 114 Or App 32, 834 P2d 463 (1992), and *State v. Layton*, 114 Or App 637, 834 P2d 553 (1992). We allowed review and consolidated the cases to consider whether this court's decision requiring jury unanimity in *State v. Boots* applies in the context of a DUII prosecution.[4] We conclude that it does not. We also consider and reject defendants' contention that their federal due process rights were denied by failure to require jury unanimity in this context. Accordingly, we affirm the decisions of the Court of Appeals and the judgments of the trial courts.

---

reasonable doubt either that the defendant was adversely affected to a perceptible degree or that defendant's blood alcohol at the time of the driving was a .08% or greater."

Layton's requested instruction concluded that if "you cannot unanimously agree on any one theory, you cannot return a verdict of guilty."

[4] As a preliminary matter, we address the state's contention that defendants did not preserve for review the argument that the reasoning of *State v. Boots*, 308 Or 371, 780 P2d 725 (1989), applies to this case. *Boots* relied for its conclusion upon provisions regarding murder trials in ORS 136.450 and upon Article I, section 11, of the Oregon Constitution.

ORS 136.450 provides:

"Except as otherwise provided, the verdict of a trial jury in a criminal action shall be by concurrence of at least 10 of 12 jurors except in a verdict for murder which shall be unanimous."

Article I, section 11, of the Oregon Constitution provides, in part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury * * * provided, however, that in the circuit court ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict, and not otherwise[.]"

The state, in its response brief to this court, points out that neither the statutory nor constitutional foundation relied upon in *Boots* is applicable to this case. That is true; this case did not involve a murder charge and was not tried in a circuit court. This leads the state to argue that defendants failed to preserve the issue by failing to present to the trial court or to the Court of Appeals an alternative statutory or constitutional basis for his asserted right to a unanimous jury verdict in a six-juror district court trial.

We reject the state's argument. Defendants did preserve the issue of jury agreement on a verdict by referring to the *Boots* decision at trial and on appeal. *See State v. Hitz*, 307 Or 183, 766 P2d 373 (1988) (to preserve an issue for appeal, it is essential to raise the issue, less essential to identify the source, least essential to make a particular argument). What defendants failed to do was to argue *why* the right to jury unanimity applied to his DUII proceeding in district court; that right simply was assumed by both courts below. The level of specificity argued by the state was not required to preserve the issue for review.

## THE BOOTS DECISION

*State v. Boots, supra,* established that, in order to convict, a jury must agree unanimously upon which statutorily-defined set of factual circumstances made a particular murder an *aggravated* murder. The defendant in that case was charged with committing murder under circumstances implicating two of the 17 separate aggravating factors listed in ORS 163.095.[5] This court held that the trial court erred by not instructing the jury that, to convict, the jury had to agree upon the defendant's guilt under at least one single aggravating factor listed in the aggravated murder statute. It was not sufficient that all members of the jury merely agreed as to defendant's guilt. *State v. Boots, supra,* 308 Or at 377.

Nothing in *Boots* limits its holding to aggravated murder cases, and we assume for the purposes of our analysis here that its rationale is not necessarily limited to such cases or even to cases requiring jury unanimity. We proceed to defendants' contention that a so-called *"Boots* instruction" is required in a DUII prosecution.

The basic rationale of *State v. Boots, supra,* 308 Or at 375 and 381 n 9, is that each of the 17 special circumstances or "aggravating factors" listed in ORS 163.095 is an element of a separate and distinct crime.[6] Each element of each crime must be proven to each juror beyond a reasonable doubt. To further illustrate the court's conclusion in *Boots,* the elements upon which a jury must agree in a particular aggravated murder case could be murder plus intentional maiming, ORS 163.095(1)(e), or murder plus use of an explosive, ORS

---

[5] The details of ORS 163.095 are not germane to this opinion. The statute defines aggravated murder by setting out the special circumstances under which intentional or felony murder can be aggravated murder. ORS 163.095 provides, in part:

" '[A]ggravated murder' means murder * * * which is committed under, or accompanied by, any of the following circumstances: [listing 17 separate circumstances]."

[6] *State v. Boots,* 308 Or 371, 780 P2d (1989), relied in part on *United States v. Gipson,* 553 F 2d 453 (5th Cir 1977), an opinion called into question after *Boots* by *Schad v. Arizona,* 501 US ____, 111 S Ct 2491, 115 L Ed 2d 555 (1991). The Supreme Court of the United States determined in *Schad* that different statutory offenses require separate verdicts, but that the question whether statutory alternatives amount to separate offenses is best answered by an inquiry into legislative intent rather than the analysis of "conceptual groupings" of offenses suggested by *Gipson.* We conclude that the *Schad* opinion is consistent with this court's analysis in *Boots.*

163.095(2)(c), but it would *not* suffice if the jury agreed to an element defined as "murder plus *either* intentional maiming *or* use of an explosive." Said another way, the crime of aggravated murder is composed of the element of murder plus the element of a particular aggravating circumstance.

Central to the *Boots* decision was a concern for the possibility that, at the close of trial, a jury could agree on guilt by agreeing that *some* one or another of a number of aggravating factors was proved *without* agreeing that any *particular* aggravating factor was proved. *State v. Boots, supra*, 308 Or at 379. Logically, such failure to agree on an aggravating factor (a factor having been defined by the court as an element of the offense) would result in a jury's failing to agree that a defendant had committed a particular crime of aggravated murder *at all*. The court stressed that jury unanimity is required for "facts that the law (or the indictment) has made essential to a crime," not for "factual details, such as whether a gun was a revolver or a pistol and whether it was held in the right or left hand." *Ibid*.

## ANALYSIS OF THE DUII STATUTE

DUII is defined in ORS 813.010, which provides:

"(1) A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has .08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150; [or]

"(b) Is under the influence of intoxicating liquor or a controlled substance; or

"(c) Is under the influence of intoxicating liquor and a controlled substance."

Do those statutory subsections describe essential elements of three separate offenses, as do the 17 aggravating factors that are essential elements of ORS 163.095, or do they establish three sets of circumstances, any or all of which go to prove a single essential element (being under the influence of intoxicants)?

If the language of the statute under consideration is ambiguous, we must attempt to construe the statute. In construing a statute, we must attempt to discern the intent of the legislature. ORS 174.020; *State ex rel Juv. Dept. v. Ashley*, 312 Or 169, 174, 818 P2d 1270 (1991). To do that, we look first to the text and context of the statute, in an effort to give effect to all provisions. ORS 174.010. *See Sanders v. Oregon Pacific States Ins. Co.*, 314 Or 521, 840 P2d 87 (1992) (illustrating general principles of statutory construction). If the text and context are not sufficiently illuminating and ambiguity remains, we look to legislative history. *Teeny v. Haertl Constructors, Inc.*, 314 Or 688, 842 P2d 788 (1992).

Like the aggravated murder statute, the DUII statute is written in the disjunctive: The offense is committed if a person drives a vehicle while (1) the person has the requisite concentration of alcohol in his or her blood *or* while (2) the person's mental or physical abilities are affected to a perceptible degree by ingestion of intoxicants. Defendants argue that driving with a BAC of .08 is a different offense from driving while perceptibly affected by intoxicants. The state argues that a .08 BAC level and perceptible impairment are alternative factual circumstances, but that either of them establishes the single *element* of "being under the influence of intoxicants" of a single offense. The text of the statute can be read to support either of those interpretations.

We next look to context. ORS 813.010 specifically identifies the offense thus: "A person commits the offense of *driving while under the influence of intoxicants* if * * *." (Emphasis added.) The emphasized phrase is repeated throughout ORS chapter 813 as part of nearly every statute contained therein. The chapter provides for a driver's implied consent to submit to field sobriety tests if a "police officer reasonably suspects the driver has committed *the* offense of [DUII]," ORS 813.135 (emphasis added) and, if the driver is arrested for DUII, to a breath test to determine his or her BAC, ORS 813.100. ORS 813.300 establishes that BAC test results are admissible in civil or criminal actions. Specifically,

"Not less than .08 percent by weight of alcohol in a person's blood constitutes being under the influence of intoxicating liquor." ORS 813.300(2).[7]

---

[7] There is an exception in ORS 813.300 for persons under the age of 21. For

The context of ORS 813.010 suggests that there is but a single offense of DUII and that chemical evidence of a .08 percent BAC is a *circumstance* tending to prove *one element* of that offense, the element of *being under the influence* of intoxicating liquor and/or a controlled substance. (BAC tests, of course, do not measure the presence or influence of a controlled substance, although the offense of DUII can be committed by driving under its influence, as well.)

Because there remains some potential for ambiguity, we look to legislative history for insight into legislative intent. As defendants point out, the two subsections at issue were born in different contexts. Driving while under the influence of intoxicating liquor has been forbidden by Oregon law since 1925.[8] Or Laws 1925, ch 182. That law was interpreted in 1926 to forbid driving while "under the influence of intoxicating liquor to some perceptible degree." *State v. Noble,* 119 Or 674, 678, 250 P 833 (1926). The first statutory reference to a specified BAC was in a 1965 statute establishing a rebuttable presumption that a blood alcohol level of .15 percent constituted driving under the influence of intoxicating liquor. Or Laws 1965, ch 574, § 9 *(former* ORS 483.642 (1965)). In 1971, the legislature enacted a new statute, the direct predecessor of what is now subsection (a) of ORS 813.010(1), that made driving with a specified BAC (then .15 percent) a separate offense from driving while perceptibly impaired by intoxicants. Or Laws 1971, ch 564 *(former* ORS 487.540(1)(a) (1971)). As the Court of Appeals later noted in language adopted by this court:

> "The gravamen of ORS 487.540(1)(a) [the BAC subsection] is driving with a certain blood alcohol level. The legislature has seen fit to forbid this act, without more." *State v. Clark,* 35 Or App 851, 856, 583 P2d 1142 (1978), *aff'd,* 286 Or 33, 38, 593 P2d 123 (1979).

In affirming the Court of Appeals, this court went on to state that

---

such a person, *any* amount of alcohol in the blood constitutes being under the influence of intoxicating liquor. ORS 813.300(3).

[8] Driving while actually intoxicated has been illegal since 1917. Or Laws 1917, ch 29.

"the legislature apparently assumed, based upon scientific studies and accepted medical knowledge, that the physical and mental condition of a driver with such a level of blood alcohol is impaired to such a degree as to make it unsafe for him to drive a motor vehicle, regardless of observable physical symptoms." *State v. Clark*, 286 Or 33, 39, 593 P2d 123 (1979). (Footnote omitted.)

The two statutes were consolidated in 1975 for two reasons: (1) to avoid situations in which defendants had been charged with two offenses arising out of the same conduct and (2) to permit alternative means of proof of the offense. *See* Minutes, House Judiciary Committee, May 6, 1975, p 3 (statement of Donald L. Pailette, explaining to House Judiciary Committee why Senate Judiciary Committee and Interim Judiciary Committee who drafted the law used the disjunctive form: "if a person commits the crime of DUIL [now DUII] in any of the three ways set out [in what was to become ORS 813.010], it is one offense rather than two as it is under existing law"). *See also* Interim Committee on Judiciary, August 30, 1974, pp 44-45 (noting that making a single offense of DUII and driving with elevated BAC would be, in the words of Representative Hampton, to "permit charging the offense conjunctively and proving it disjunctively"); Interim Committee on Judiciary, September 24, 1974, p 15 (effect of change in law was "to provide an optional method of violating the DUI[I] statute").

In *State v. Miller*, 309 Or 362, 788 P2d 974 (1990), this court examined, albeit in a different context, whether the BAC and perceptible impairment subsections were different. The conclusion in that case is relevant here. The court stated:

"The offense of DUII may be proven two ways: (1) the driver had .08 percent or more by weight of alcohol in the blood; or (2) the driver was under the influence of intoxicating liquor and/or a controlled substance. *These are not two separate offenses, but two methods to prove the one crime of DUII.*" 309 Or at 369. (Emphasis added.)

■■    When this court interprets a statute, the interpretation becomes a part of the statute, subject only to a revision by the legislature. *State v. White*, 303 Or 333, 348, 736 P2d 552 (1987). Having once construed the same provisions of this

statute, albeit in a slightly different context, to have a particular meaning, we will not now consider a contrary interpretation. *Walther v. SAIF*, 312 Or 147, 817 P2d 292 (1991). We have concluded before, and now affirm our conclusion, that the legislature intended to establish one single offense of driving under the influence of intoxicants.

The legislature did intend that a person could commit that offense by driving with the specified BAC but no perceptible impairment or by driving with a legally permissible or unknown BAC but while nonetheless perceptibly impaired, but that is not inconsistent with an intent to establish two methods of proof rather than two separate offenses. We are convinced that the legislature intended to cast a net wide enough to encompass those intoxicant-using drivers whose use could be measured in *either* manner but not so wide as to permit a person to be convicted for two separate offenses for a single episode of DUII. *See State v. Miller, supra,* 309 Or at 368-69 (noting recurrent legislative efforts to enact increasingly tougher laws on drunk driving).

We conclude that ORS 813.010(1)(a) and (b) describe a single offense, DUII. That offense has two elements. A conviction may result if a jury agrees beyond a reasonable doubt that the accused (1) drove a motor vehicle (2) while under the influence of intoxicants. A jury need not agree on which test results (a BAC test or field sobriety tests or a combination thereof) established to their satisfaction that the driver was "under the influence." The trial court did not err by refusing to give defendants' requested unanimity instruction.

## FEDERAL DUE PROCESS

Defendants cite *Schad v. Arizona*, 501 US ___, 111 S Ct 2491, 115 L Ed 2d 555 (1991), for the proposition that federal due process rights are denied by failure of a jury unanimously to agree upon the state's theory of intoxication in a DUII prosecution. Due process guarantees of the Fifth and Fourteenth Amendments to the United States Constitution require "that a defendant charged under a valid statute will be in a position to understand with some specificity the legal basis of the charge against him." 115 L Ed 2d at 566. For that reason, completely separate offenses may not be joined in

a single statute under the rubric of a single "crime." *Id.* However, as the plurality of the Supreme Court of the United States noted, "legislatures frequently enumerate alternative means of committing a crime without intending to define separate elements or separate crimes," and the question whether those alternatives constitute independent elements should be answered primarily by an inquiry into legislative intent. 115 L Ed 2d at 568.

We have examined the language and history of ORS 813.010(1) and have determined that the legislature intended that DUII be a single offense with alternative means of proving the element of being under the influence of intoxicants. We have concluded that the legislature did *not* intend to establish two separate offenses by distinguishing evidence of an elevated blood alcohol content from evidence of perceptible impairment by intoxicants. The single offense of DUII may be proven in more than one way without failing to give adequate notice to a defendant of the charge against him. Accordingly, we conclude that a jury verdict finding a defendant guilty without specifying which of two methods of proof convinced the jurors is adequate under the federal constitution. The plurality opinion in *Schad* stated:

> "We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone. In these cases, as in litigation generally, 'different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.' *McKoy v. North Carolina,* 494 US 443, 449, 108 L Ed 2d 369, 110 S Ct 1227 (1990) (Blackman, J., concurring) (footnotes omitted)." 115 L Ed 2d at 565.

The Supreme Court of the United States has interpreted due process provisions of the federal constitution to provide no more protection than what this court has provided under Oregon law. The federal due process rights of defendants therefore are not violated by the conclusion we reach today under Oregon law.

The decisions of the Court of Appeals are affirmed. The judgments of the district court are affirmed.