Argued and submitted March 14, reversed and remanded May 17, respondent's petition for reconsideration filed May 31 allowed by opinion July 12, 2000
See 169 Or App 78 (2000)

# STATE OF OREGON,
*Appellant,*

*v.*

# KEITH DEE WRIGHT,
*Respondent.*

## (99-1018; CA A106682)

999 P2d 1220

Ann Kelley, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Elizabeth A. Baldwin argued the cause and filed the brief for respondent.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

## HASELTON, J.

■     The state appeals from an order sustaining a demurrer to an indictment as being insufficiently definite and certain. ORS 135.630(2); ORS 132.550(7).[1] We conclude that order is appealable under ORS 138.060(1), and reverse.

Defendant was charged by a six-count indictment, which alleged as pertinent:

"COUNT 3
"ASSAULT IN THE FOURTH DEGREE
"ORS 163.160
"Class C Felony

"The said, KEITH DEE WRIGHT, on or about the 12th day of January, 1999, in Clatsop County, State of Oregon, did unlawfully and recklessly cause physical injury to Lisa M. Rosgo, and the defendant's conduct was witnessed by Shailei M. Wright, the minor child of Lisa Rosgo;

"COUNT 4
"RECKLESSLY ENDANGERING ANOTHER PERSON
"ORS 163.195
"Class C Misdemeanor

"The said, KEITH DEE WRIGHT, on or about the 12th day of January, 1999, in Clatsop County, State of Oregon, did unlawfully and recklessly create a substantial risk of serious physical injury to Shailei M. Wright;

"COUNT 5
"MENACING
"ORS 163.190
"Class A Misdemeanor

"The said, KEITH DEE WRIGHT, on or about the 12th day of January, 1999, in Clatsop County, State of Oregon, did

---

[1] As described below, the trial court purported to grant the demurrer under ORS 135.630(6). However, that subsection applies only to accusatory instruments other than indictments, *i.e.*, informations and complaints. *See State v. Morgan*, 151 Or App 750, 753 n 4, 951 P2d 187 (1997), *rev den* 327 Or 82 (1998); *State v. Shadley/Spencer/Rowe*, 16 Or App 113, 117-18, 517 P2d 324 (1973). As we explained in *Morgan*: "A demurrer to an *indictment* on the ground that it is not sufficiently definite or certain is properly raised under ORS 135.630(2), which, by express reference, requires that the indictment conform to ORS 132.550(7)." 151 Or App at 753 n 4 (emphasis in original).

unlawfully and intentionally attempt to place Lisa M. Rosgo in fear of imminent serious physical injury."

Defendant demurrered to those counts on two alternative grounds. First, defendant asserted that "the facts stated do not constitute an offense," ORS 135.630(4), because they did not allege "any acts on the part of the defendant." Second, defendant asserted that those counts were not definite and certain in that they failed to set out "the acts constituting the offense in ordinary and concise language." ORS 132.550(7). *See* ORS 135.630(2). The state responded that the challenged counts were sufficient in both respects in that they pleaded the offenses in the language of the underlying statutes and that, to the extent that the indictment did not describe defendant's conduct with particularity, that was a matter properly addressed through pretrial discovery. The state particularly invoked our holdings in *State v. Strandquist,* 57 Or App 404, 644 P2d 658, *rev den* 293 Or 483 (1982), and *State v. Caffee,* 116 Or App 23, 840 P2d 720 (1992), *rev den* 315 Or 312 (1993).

The trial court denied defendant's demurrer that counts 3, 4, and 5 failed to allege the essential elements of the offenses. However, the court allowed defendant's demurrer that those counts were not sufficiently definite and certain:

"ORS 132.550(7) requires that an indictment contain a statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended. Article I, section 11 of the Oregon Constitution gives the defendant the right to demand the nature and cause of the accusation against him. Defendant demurred to the indictment in a timely manner and asked for specificity with regards to Counts 3, 4 and 5.

"The state used to plead conduct in assault cases but no longer does so. It has not shown that it would be prejudiced by specifying the conduct of the defendant that caused the results alleged other than its claim that it might allege one act but prove something else. However, without specificity, the defendant may prepare a defense for one act and find out at trial that the state will prove something else.

"In balancing the rights of the defendant with the imposition on the state, I conclude that it is reasonable for the

state to allege the acts that caused the results in Counts 3, 4 and 5. Motion one is allowed. The state may replead Counts 3, 4 and 5."

The court then entered an "Order on Defendant's Demurrer," allowing the demurrer and granting the state leave to resubmit the case to the grand jury. The state opted not to resubmit to the grand jury, and appeals from that order.

■ At the outset, we must address a jurisdictional issue. Defendant contends that the state cannot appeal from a pretrial order sustaining a demurrer under ORS 135.630(2)— and, particularly, that such an appeal is not authorized by ORS 138.060(1). We disagree. *See State v. Robertson*, 293 Or 402, 404-07, 649 P2d 569 (1982).

ORS 138.060(1) provides that the state may appeal "[a]n order made prior to trial dismissing or setting aside the accusatory instrument." In *Robertson*, the court considered the scope of that provision and, particularly, whether it encompassed " 'orders' sustaining demurrers whether or not they are identified as judgments, as prescribed in ORS 135.660."[2] 293 Or at 407. The court canvassed the evolution of the statute, *id.* at 406-07, and concluded that, based on the legislative history, ORS 135.660(1) was not limited "literally" to appeals of orders of dismissal under ORS 135.470[3] and orders setting aside indictments under ORS 135.510.[4] Rather, the statute was intended to broadly encompass orders sustaining demurrers that formerly would not have

---

[2] ORS 135.660 states:

"Upon considering the demurrer, the court shall give judgment, either allowing or disallowing it, and an entry to that effect shall be made in the register."

[3] ORS 135.470(1) provides:

"The court shall dismiss the accusatory instrument if, upon motion of the defendant, it appears, as a matter of law, that a former prosecution bars the prosecution for the offense charged."

[4] ORS 135.510(1) provides:

"The indictment shall be set aside by the court upon the motion of the defendant in either of the following cases:

"(a) When it is not found, indorsed and presented as prescribed in ORS 132.360, 132.400 to 132.430 and 132.580.

"(b) When the names of the witnesses examined before the grand jury are not inserted at the foot of the indictment or indorsed thereon."

been reviewable in the absence of a subsequent judgment of dismissal. 293 Or at 406-07 (noting that the legislation was intended, *inter alia*, to supersede the "rule" of *State v. Cloran*, 233 Or 400, 404, 374 P2d 748 (1962), and related cases that an order sustaining a demurrer was not final and, hence, not appealable).

■        Thus, the court concluded that

"because the purpose of the [statutory] amendments was to broaden the state's ability to appeal orders that invalidate accusatory instruments, the court may take jurisdiction of such appeals from 'orders' sustaining demurrers whether or not they are identified as judgments, as prescribed in ORS 135.660." 293 Or at 407.

Under the rule of prior construction, *see Stephens v. Bohlman*, 314 Or 344, 350 n 6, 838 P2d 600 (1992), that holding is incorporated into the statute. *See also State v. Parker*, 299 Or 534, 538-39, 704 P2d 1144 (1985) (order sustaining demurrer to one count of multiple-count indictment is appealable) (applying *Robertson*).

Defendant argues, nevertheless, that *Robertson* is not dispositive because the demurrer there was based on ORS 135.630(4) and, particularly, asserted that the indictment did not allege a crime because the underlying coercion statute was unconstitutionally vague. Defendant's argument, as we understand it, is that *Robertson*'s jurisdictional holding goes only to orders sustaining demurrers under subsection (4), and not to ORS 135.630 generally. Nothing in *Robertson* suggests such a limitation.[5] To the contrary, *Robertson*'s holding is unqualified. Accordingly, the trial court's order sustaining the demurrer under ORS 135.630(2) is appealable.

---

[5] Indeed, at least one of the *Cloran* line of cases, which *Robertson* concludes that the legislature intended to "supersede," involved, *inter alia*, a demurrer that the indictment "charge[d] more than one offense not separately stated." ORS 135.630(3). *See State v. Davis*, 207 Or 525, 531, 296 P2d 240 (1956). *See also State v. Thompson*, 40 Or App 461, 595 P2d 842 (1979) (reversing dismissal of criminal complaint after state refused to plead further "after the trial court sustained defendant's demurrer, with leave to amend, on the ground that it was not [sufficiently] definite and certain").

Turning to the merits, ORS 135.630 provides, in part:

"The defendant may demur to the accusatory instrument when it appears upon the face thereof:

"* * * * *

"(2) If the accusatory instrument is an indictment, that it does not substantially conform to the requirements of ORS 132.510 to 132.560 * * *;

"* * * * *

"(4) That the facts stated do not constitute an offense[.]"

ORS 132.550 provides, in part:

"The indictment shall contain substantially the following:

"* * * * *

"(7) A statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended[.]"

The state argues, as it did to the trial court, that the indictment was sufficiently definite and certain. The state invokes the well-established principle that, in general, "an indictment in the language of [the] statute" is sufficient to withstand a demurrer. *E.g., State v. Nussbaum*, 261 Or 87, 91, 491 P2d 1013 (1972); *State v. Bockorny*, 125 Or App 479, 483, 866 P2d 1230 (1993), *on recons* 126 Or App 504, 869 P2d 349, *rev den* 319 Or 150 (1994). Indeed, the state asserts, there is no case in which an indictment alleged in the language of the underlying statute has been deemed insufficient under ORS 135.630(4) as failing to state facts sufficient to constitute an offense.

■ ■ Defendant responds that "sufficiency" under subsection (4) and "definiteness and certainty" under subsection (2) and ORS 132.550(7) are distinct concepts and distinct requirements—*generally* analogous in the civil context to the bases for a motion to dismiss for "failure to state ultimate facts sufficient to constitute a claim," ORCP 21 A(8), and a

motion to make more definite and certain under ORCP 21 D. Thus, defendant reasons, an indictment's "sufficiency" for purposes of subsection (4) does not determine whether it is adequately definite and certain to withstand a demurrer under subsection (2). Rather, defendant asserts, the analysis under subsection (2) and ORS 132.550(7) is more specific and rigorous, *see, e.g., State v. Sanders*, 280 Or 685, 572 P2d 1307 (1977), and, under *Sanders* and related cases, the three challenged counts here are fatally inadequate because they fail to allege defendant's conduct with specificity.[6] As amplified below, we agree with defendant and the trial court that an indictment that satisfies subsection (4) may nevertheless be inadequate under subsection (2) and ORS 132.550(7). However, we conclude that the three challenged counts here were, in fact, sufficiently definite and certain to withstand demurrer under subsection (2) and ORS 132.550(7). *See, e.g., Caffee*, 116 Or App 23; *Strandquist*, 57 Or App 404; *State v. Shadley / Spencer / Rowe*, 16 Or App 113, 517 P2d 324 (1973).

The first reported Oregon decision sustaining a demurrer to an indictment as being insufficiently definite and certain was *State of Oregon v. Dougherty*, 4 Or 200 (1871). There, the indictment alleged that the defendants had "unlawfully and feloniously aid[ed] and were concerned in setting up a lottery for money contrary to the statute." *Id.* The defendants demurred on the ground that "the particular acts constituting the crime were not set forth." *Id.* The demurrer was denied and, after the defendants were convicted, they appealed. The Supreme Court reversed, concluding that the demurrer should have been allowed:

"We think that, under our Code, whenever it is practicable, the indictment should contain such *specification of acts* and *descriptive circumstances* as will, upon its face, fix and determine the identity of the offense, and enable the Court,

---

[6] Defendant also argues that the trial court erred in holding that the disputed counts stated facts constituting a crime and that we should affirm on that alternative basis. As explained below, an indictment may state a crime but still be subject to demurrer as being insufficiently definite and certain. However, the obverse is not true. An indictment that adequately alleges "the acts constituting the offense in ordinary and concise language," ORS 132.550(7), necessarily alleges facts sufficient to constitute an offense. Consequently, given our ultimate holding that the challenged counts are sufficiently definite and certain, defendant's alternative argument fails *a fortiorari*.

by an inspection of the record alone, to determine whether, admitting the truth of the specific acts charged, a thing has been done which is forbidden by law.

"By the language of this indictment it is not possible to determine what particular unlawful act, or lottery transaction, or scheme, the defendants are charged with 'aiding and being concerned in setting up.' The defendants in this case might, at the time and place charged, have been engaged in half a dozen of the almost innumerable lottery schemes * * *. By what *act* did they aid and in what *manner* were they engaged in setting up the forbidden scheme? What was the *nature* of the lottery scheme referred to? The language of the indictment answers none of these questions. How could the defendants, with any certainty, prepare for their defense? They might be prepared to defend against one transaction, while the State came into court prepared to prosecute them on another and entirely different one. Good pleading in either criminal or civil proceedings does not subject the litigant to such uncertainty, annoyance and unnecessary expense." *Id.* at 205-06 (emphasis in original).

Perhaps ironically, Volume 4 of the Oregon Reports also includes what appears to be the Supreme Court's first endorsement of the principle that " 'in an indictment for an offense created by statute, it is sufficient to describe the offense in the words of the statute;' and [that] position is undoubtedly true as a general rule." *State of Oregon v. Packard*, 4 Or 157, 160 (1871) (quoting Wharton's Criminal Law § 374).

For a century after *Packard* and *Dougherty*, Oregon courts routinely endorsed the contending propositions that "generally, pleading in the language of the statute is sufficient" "but sometimes the indictment must be more specific," without exploring the tension between the two. *State v. Smith*, 182 Or 497, 188 P2d 998 (1948), is illustrative. There, the defendant unsuccessfully demurred to an indictment for labor racketeering as failing to state facts sufficient to constitute a crime, including the "acts constituting the alleged force, threats or intimidation." *Id.* at 500. The court concluded that the allegations of the indictment, tracking the statutory language, were sufficient to state a crime. However, in *dictum*—and after quoting *Dougherty*—the court

noted that the defendant could have successfully demurred to the same allegations as not being sufficiently definite and certain:

> "We agree that, in the case at bar, the indictment should have set forth clearly and distinctly the particular acts, words, or other coercive matters constituting the alleged force, threats, and intimidations." *Id.* at 506.

The court did not explain that *dictum*, much less explore the twilight zone between its holding and its *dictum*.

In *Shadley / Spencer / Rowe*, this court, in an opinion by Chief Judge Schwab, confronted and grappled with the cross-currents of a century of case law. There, the defendants had successfully demurred to indictments that "merely alleged that defendants 'did * * * furnish Marihuana,' " as being insufficient because those indictments did not specify to whom, and in what manner, the marijuana was furnished. 16 Or App at 115. We reversed, concluding that the indictments both alleged facts constituting an offense and were sufficiently definite and certain. We began by acknowledging "the considerable ambiguity in the Oregon cases concerning these two different grounds for demurrer in criminal cases." *Id.* at 118. We then reviewed the historically recognized functions of indictments, as described in *State v. Smith*,[7] and concluded, *inter alia*, that innovations in criminal practice and procedure, and particularly the availability of criminal discovery, had "reduce[d] the importance" of the "notice" function of the indictment, *viz.*, "to inform the accused of the nature and character of the criminal offense with which he is charged with sufficient particularity to enable him to make his defense." *Id.* at 119 (quoting *Smith*, 182 Or at 501). Given that conclusion, we proceeded to hold:

---

[7] In *Smith*, the court described those purposes as:

"(1) to inform the accused of the nature and character of the criminal offense with which he is charged with sufficient particularity to enable him to make his defense, (2) to identify the offense so as to enable the accused to avail himself of his conviction or acquittal thereof in the event that he should be prosecuted further for the same cause, and (3) to inform the court of the facts charged so that it may determine whether or not they are sufficient to support a conviction." 182 Or at 500-01.

"In light of these statutory changes, it would appear that Oregon criminal procedure has been and is now evolving toward the concept that an indictment is merely a formal method of initiating criminal proceedings and identifying the name of the crime that the accused is alleged to have committed. All other purposes served by indictments under older statutes 25 years ago are now served as well or better by newer statutory schemes. This being the case, policy considerations suggest: (1) a demurrer to an indictment based on ORS 135.630 (2) and 132.550 (7) is not analogous to a motion to make more definite and certain in a civil case; (2) contrary to defendants' contention, trial courts have little or no discretion in passing on such a demurrer; and (3) in this case, it was error to require greater specificity than contained in the indictments, *i.e.*, that the defendants furnished marihuana.

"\* \* \* \* \*

"We assume that during the course of discovery defendants will learn both the manner in which they supposedly furnished drugs and the person to whom they supposedly furnished drugs. However, if the state refuses to put such information in an indictment, and if for some reason it is not disclosed during discovery, and if defendants claim that they are in fact surprised by the state's evidence at trial, then \* \* \* the defendants should be granted continuances in order to prepare their defense." *Id.* at 120, 123 (citations omitted).

*Shadley / Spencer / Rowe* — and especially its pragmatic premise that the availability of pretrial criminal discovery is *generally* sufficient to cure imprecision in charging instruments — is the baseline of our analysis and ultimate holding here. In the last quarter-century, we have consistently applied that pragmatic principle in circumstances analogous to those presented here. *See, e.g., Caffee,* 116 Or App 23; *Strandquist,* 57 Or App 404; *State v. Thompson*, 40 Or App 461, 595 P2d 842 (1979). In those cases in which we and the Supreme Court have required greater specificity, the overarching theme has been that, given the nature or complexity of the crime, or the sheer volume of potential discovery, discovery cannot, as a practical matter, cure the imprecision of the charging instrument. *See, e.g., Sanders*, 280 Or

685; *State v. Cooper*, 78 Or App 237, 715 P2d 504 (1986); *State v. Kincaid*, 78 Or App 23, 714 P2d 624 (1986).

*Caffee* and *Strandquist* exemplify the first group of cases. In *Caffee*, we held that an indictment that alleged sexual abuse in the second degree in the language of the statute, without specifying the conduct giving rise to that charge, was sufficiently definite and certain. In so holding, we noted that the discovery included the police report describing the underlying incident and that, thus, "[d]efendant could not have been mistaken about the charge against him." 116 Or App at 25-26.

Similarly, in *Strandquist*, in reviewing a trial court's allowance of a demurrer against a criminal complaint for resisting arrest, we concluded that the charging instrument, which did not specify the nature of the "resistance," was sufficiently definite and certain. In so holding, we concluded:

> "Criminal discovery statutes, ORS 135.805 *et seq.*, afford defendant the opportunity to obtain specific and detailed information about the state's theory of its case and the evidence it intends to produce at trial. We have recognized that the purposes that indictments and complaints are designed to serve in criminal cases are now served as well or better by discovery." 57 Or App at 407 (citing *Shadley / Spencer / Rowe*, 16 Or App at 119-20).

*See also Thompson*, 40 Or App 461, 464 (reversing allowance of demurrer; indictment for assault in fourth degree, which did not specify injury suffered, was sufficiently definite and certain: "Defendant's interest in the adequate preparation of a defense is protected by the criminal discovery statutes.").

*Sanders* is the leading "modern" case sustaining a demurrer against an indictment as being insufficiently definite and certain. There, an indictment for burglary failed to allege the crime that the defendant intended to commit when he allegedly unlawfully entered a building. The Supreme Court, after referring to the historically recognized purposes of indictments as described in *Smith*,[8] noted that "[f]or many years" Oregon practice had been for the charging instrument to specify the "particular crime intended at the time of the

---

[8] *See* n 7 above.

breaking and entry"; that the practice in other jurisdictions was the same; and that the state had demonstrated no prejudice from being required to continue to adhere to that established practice. 280 Or at 688-89. The court then went on to explicitly distinguish *Shadley/Spencer/Rowe* and its underlying principle:

"In some instances, the availability of discovery can remedy a deficiency in the specificity of the indictment [citing *Shadley /Spencer/Rowe*]. However, the pretrial discovery available to the defendant in this case would not enable him to know what criminal intent the state was going to attempt to prove. Statements of witnesses, which are discoverable, might or might not give the defendant a clue, but one charged with a felony is entitled to more than a clue as to what the state contends are the elements of the crime charged." 280 Or at 690 (citation omitted).

In two post-*Sanders* cases, we too sustained demurrers against the indictments as being insufficiently definite and certain. *See Kincaid,* 78 Or App 23; *Cooper,* 78 Or App 237. In both, we concluded that the availability of pretrial discovery could not cure the indictments' material lack of specificity. In *Kincaid,* the defendant appealed his conviction for unlawful racketeering activity under ORS 166.720(3), assigning error to the trial court's denial of his demurrer against the indictment, which tracked the statute's language, as being insufficiently definite and certain. The defendant argued, particularly, that the indictment was deficient in that, although it identified theft "as the *kind* of predicate offense" for ORICO purposes, "it failed to describe the *incidents* of theft which the state intended to prove." *Kincaid,* 78 Or App at 26 (emphasis in original). We agreed. In so holding, we rejected the state's argument that its provision of extensive pretrial discovery—"several volumes of data pertaining to the [defendant's and other alleged participant's] activities"—remedied any imprecision. *Id.* at 27. We noted that, as in *Sanders*:

"[A]n unspecific indictment cannot be saved by the availability of discovery if the discovery is unlikely to inform defendant of the specific criminal conduct the state intends to prove.

"As this case illustrates, when there are a large number of predicate offenses, discovery amounts to a poverty of riches.

"The very volume of the discovery material, together with the large number of predicate offenses on which the state can potentially rely in ORICO prosecutions, is what makes discovery inadequate as an alternative to notifying an ORICO defendant by indictment of the 'acts constituting the offense in ordinary and concise language * * * in such manner as to enable a person of common understanding to know what is intended.' Stated differently, discovery is not a satisfactory substitute for specificity in indictments in ORICO cases, because effective notice is as much obscured by too much information as it is denied by too little information. Discovery can of course serve important purposes in the ORICO setting, but providing basic notice of the charge the defendant must be prepared to refute is not among them." 78 Or App at 29-30.

*Cooper* reached a similar result from a different approach. There, the defendant demurred to a complaint that alleged the misdemeanor of promoting gambling in the second degree, ORS 167.122. *Cooper*, 78 Or App at 239. The complaint alleged the crime in statutory language, but the defendant contended that it was insufficient in that it did not allege the particular conduct giving rise to the charges. The trial court allowed the demurrer, and we affirmed. In so holding, we emphasized the open-ended nature of the underlying statute, which provided that the proscribed activity "includes but is not limited to" listed conduct.[9] *Id.* at 244. Consequently, we concluded:

---

[9] ORS 167.117(10) (1985) provided:

" 'Promotes gambling' means that a person, acting other than as a player, engages in conduct that materially aids any form of gambling. *Conduct of this nature includes, but is not limited to*, conduct directed toward the creation or establishment of the particular game, contest, scheme, device or activity involved, toward the acquisition or maintenance of premises, paraphernalia, equipment or apparatus therefor, toward the solicitation or inducement of persons to participate therein, toward the conduct of playing phases thereof, toward the arrangement of any of its financial or recording phases or toward any other phase of its operation. A person promotes gambling if, having control or right of control over premises being used with the knowledge of the person for purposes of gambling, the person permits the gambling to occur or continue or makes no effort to prevent its occurrence or continuation." (Emphasis added.)

That definition, in modified form, is now set out in ORS 167.117(17).

"Because the conduct listed in ORS 167.117(10) is not exclusive, we are unable to say that this is a situation where discovery could remedy the deficiency of the accusatory instrument." 78 Or App at 241.

■       We conclude that this case is more closely analogous to the *Shadley/Spencer/Rowe* line of precedent than to *Sanders* and its progeny. As in *Caffee, Strandquist,* and *Thompson*, the crimes alleged here—assault in the fourth degree, reckless endangerment, and menacing, all on the same day and involving the same parties—are relatively simple and straight-forward and not complex or open-ended, as in *Sanders, Kincaid,* and *Cooper*. Consequently, the potential for confusion from the charging instrument itself is greatly reduced. Concomitantly, given the nature of the alleged crimes, it is likely that pretrial discovery—and, particularly, production of the police report of the underlying incident—will dispel any uncertainty as to the particular bases of the charges. *Compare, e.g., Caffee,* 116 Or App 23. In short, this is not a case where "the discovery is unlikely to inform the defendant of the specific criminal conduct the state intends to prove." *Kincaid,* 78 Or App at 29.

Counts 3, 4, and 5 of the indictment were sufficiently definite and certain to withstand demurrer. Accordingly, the trial court erred in allowing the demurrer.[10]

Reversed and remanded.

---

[10] We note, finally, and parenthetically, that, unlike in *Sanders*, there is no evidence in this record that the state has a long-established practice of alleging the particular underlying conduct in charging fourth-degree assault, reckless endangerment, or menacing, or that such a practice is well established in other jurisdictions.