171 P.3d 988 (2007)
216 Or. App. 179
STATE of Oregon, Plaintiff-Respondent,
v.
Misty Lynn DUFFY, Defendant-Appellant.
040849952; A127244.
Court of Appeals of Oregon.
Submitted on Record and Briefs July 20, 2007.
Decided November 7, 2007.
Garrett A. Richardson filed the brief for appellant. Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Ryan Kahn, Assistant Attorney General, filed the brief for respondent.
Before EDMONDS, Presiding Judge, and WOLLHEIM and SERCOMBE, Judges.
EDMONDS, P.J.
Defendant appeals a judgment of conviction for engaging in unlawful prostitution procurement activities, a misdemeanor, in violation of Portland City Code (PCC) section 14A.40.050. Defendant raises two assignments of error. First, she assigns error to the trial court's denial of her demurrer to the charging instrument. Second, she assigns error to the trial court's refusal to give her requested jury instructions that would have informed the jury that, in order to convict her of the charged offense, all six of its members were required to agree on the particular activity that she had engaged in that constituted a substantial step in furtherance of an act of prostitution. We affirm.
This court reviews a trial court's ruling on a demurrer to the charging instrument for errors of law. State ex rel Juv. Dept. v. Aragorn, 189 Or.App. 65, 72, 73 P.3d 939, rev. den., 336 Or. 192, 82 P.3d 626 (2003). The Portland City Code makes it illegal to engage in "Unlawful Prostitution Procurement Activities":
"A. As used in this Section, `prostitution' means that unlawful conduct defined in Section 14.A40.040 of this Code. As used in this Section, `prostitution procurement activity' means any conduct by any person that constitutes a substantial step in furtherance of an act of prostitution. *990 Such activity includes, but is not limited to, lingering in or near any street or public place, repeatedly circling an area in a motor vehicle, or repeatedly beckoning to, contacting, or attempting to stop pedestrians or motor vehicle operators.
"B. It is unlawful for any person to engage in any prostitution procurement activity with an intent to induce, entice, solicit, procure, locate, or contact another person to commit an act of prostitution."
PCC 14A.40.050 (emphasis added). The complaint served on defendant alleges that she "intentional[ly]" or "knowing[ly]" committed unlawful prostitution procurement activities in violation of "PCC 14A.40.050" without further specifying the activities alleged. Before trial, defendant demurred to the complaint on the ground that it failed to give her sufficient notice of the factual allegations that would allow her to prepare her defense. The state responded that, even if the contents of the complaint were inadequate to provide sufficient notice, the pretrial discovery furnished to defendant adequately supplemented the complaint and provided the notice required for her to defend against the charge. The discovery provided to defendant informed her that the state would seek to prove at trial that she was observed walking up and down a street while wearing a short dress, looking at passing motorists and attempting to make eye contact with them, and checking the side streets to see if any cars had stopped. Also, the provided discovery informed defendant that she was carrying condoms and money; that when a police officer asked defendant whether she was a prostitute, she responded in the affirmative; and that when the officer asked her how much money she had made, she said, "[N]one yet." The discovery also notified defendant that the state would offer testimony that, based on the police officer's training and experience, he would opine at trial that defendant's conduct was consistent with prostitution activities.
Generally, pretrial discovery is "sufficient to cure imprecision in charging instruments." State v. Wright, 167 Or.App. 297, 307, 999 P.2d 1220, modified on recons., 169 Or.App. 78, 7 P.3d 738, rev. den., 331 Or. 334, 23 P.3d 986 (2000) (citing State v. Shadley/Spencer/Rowe, 16 Or.App. 113, 123, 517 P.2d 324 (1973)). However, greater specificity in the charging instrument is required when, due to the charge's complexity or the large volume of potential discovery, it is impractical for the discovery that is furnished to remedy the charging instrument's imprecision. Wright, 167 Or.App. at 307, 999 P.2d 1220.
Defendant relies on our opinion in State v. Cooper, 78 Or.App. 237, 715 P.2d 504 (1986), in arguing that the discovery provided to her was insufficient to enable her to defend against the charge. The defendant in Cooper was charged with promoting gambling under ORS 167.122. Id. at 239, 715 P.2d 504. The complaint alleged the crime in the language of the statute but did not set out the factual details that gave rise to the charge. Id. at 240-41, 715 P.2d 504. The trial court sustained the defendant's demurrer, and the state appealed. Id. at 239, 715 P.2d 504. On appeal, we affirmed, observing that the statute under which the charge was made not only defined what activities constituted the promotion of gambling but also provided that the activities enumerated were not exclusive. Id. at 241, 715 P.2d 504. We explained,
"[b]ecause the conduct listed in [the statute] is not exclusive, we are unable to say that this is a situation where discovery could remedy the deficiency of the accusatory instrument. Defendant should not be required to undertake a fishing expedition to determine precisely what it is that she did wrong."
Id.
Defendant compares the ordinance in this case to the statute in Cooper and argues that, because the list of activities that violate the ordinance is not exclusive, the discovery provided to her does not remedy the complaint's deficiency. But there is a significant difference between the facts in this case and the facts in Cooper. In Cooper, the state appealed the trial court's grant of defendant's demurrer before any discovery occurred. Thus, we were unable to say "whether discovery could remedy the deficiency of the accusatory instrument." 78 Or.App. at 241, *991 715 P.2d 504 (emphasis added). Here, in contrast, defendant appeals after the state provided discovery. Although the ordinance in this case is not exclusive, the discovery furnished to defendant operated to inform her of the precise activities on which the charge was based. Therefore, unlike in Cooper, we can look to the record before us to determine whether discovery remedied the complaint's imprecision.
In this case, the charge is not so complex as to prohibit discovery from curing its imprecision. It involves activities that were performed by one defendant, took place in one location, and occurred during a single incident. The amount of discovery and its details are minimal. Under the circumstances of this case, we conclude that the discovery provided to defendant sufficed to put her on notice as to the circumstances relied on by the state to prove the charge. Accordingly, the trial court did not err in concluding that any imprecision in the charging instrument was remedied by the discovery provided to defendant.
In defendant's second assignment of error, she argues that the trial court erred by refusing to give her requested jury instructions that would have informed the jury that it was required to agree on a particular activity described in the discovery materials before it could convict her of the charge. We review a trial court's refusal to give a requested instruction for errors of law in light of the facts that are most favorable to the defendant. State v. Averitt, 187 Or.App. 486, 488, 68 P.3d 269 (2003).
At trial, defendant requested two jury instructions based on the Supreme Court's decision in State v. Boots, 308 Or. 371, 780 P.2d 725 (1989). The first proposed instruction would have instructed the jury as follows:
"[Defendant] is charged with one count of Unlawful Prostitution Procurement Activities. There are various ways for the state to prove that charge. However, in deliberating as to the charge, Oregon law requires that all six jurors consider the same proof or lack of proof for each possible theory of the case.
"In other words, for example, when deliberating, all six of you must consider whether the state has proven the charge beyond a reasonable doubt with respect to the same alleged act. It would be unfair and unlawfulfor one juror to consider the charge with one activity in mind and another juror to consider the charge with a different activity in mind. All six jurors must agree on any verdict."
The second proposed instruction listed a number of factual theories and instructed the jury that all six jurors must agree on at least one of the listed theories to convict. The trial court refused to give the instructions, reasoning that the state's different factual theories were simply alternative ways of proving unlawful prostitution procurement activity.
On appeal, defendant argues that, under Boots, the court was required to give her requested instructions. In Boots, the defendant was charged with aggravated murder under two different subsections of the aggravated murder statute. 308 Or. at 374, 780 P.2d 725. One subsection required a determination regarding whether the defendant killed the victim to conceal the commission of a robbery or the identity of the robber. Id. The other subsection required a determination as to whether the defendant personally killed the victim in the course of first-degree robbery without having any thought of concealing the identity of the robber. Id. The trial court specifically instructed the jury that the jurors were not required to unanimously agree on either theory, so long as the jurors agreed that the state had proved some combination of one or both of the aggravating factors. Id. at 374-75, 780 P.2d 725. On appeal, the Supreme Court held that the jury instruction given by the court was error because it did not instruct the jury that, in order to convict, it had to unanimously agree to the facts required by either subsection. Id. at 377, 780 P.2d 725. The holding in Boots was prompted by the concern that a jury could return a guilty verdict without agreeing that the state had proved any single aggravating factor or element of the crime beyond a reasonable doubt. Id. at 379, 780 P.2d 725.
*992 In response to defendant's arguments, the state asserts that, under State v. King, 316 Or. 437, 852 P.2d 190 (1993), the court was not required to give defendant's requested instructions. In King, two cases were consolidated for oral argument and opinion. Id. at 439, 852 P.2d 190. In each case, the prosecution presented evidence that the defendants were driving with a blood alcohol content exceeding .08 percent in violation of ORS 813.010(1)(a), and that each defendant was perceptibly impaired by the ingestion of alcohol in violation of ORS 813.010(1)(b). Id. Each defendant requested an instruction that would have instructed the jury to agree on which of the DUII subsections the defendant had violated. Id. The trial courts declined to give the requested instructions, and the defendants were convicted. Id. at 439-40, 852 P.2d 190.
On review, the Supreme Court held that the trial courts did not err in refusing to give the requested instructions because the subsections of ORS 813.010(1) provided for different circumstances, each of which by themselves constituted a violation of the statute prohibiting driving while under the influence. Id. at 446, 852 P.2d 190. The King court distinguished ORS 813.010(1) from the statute at issue in Boots, which listed 17 different aggravating factors, each of which was an element of a separate and distinct crime. Id. at 442-46, 852 P.2d 190. Because each element of a crime must be proved beyond a reasonable doubt, jury concurrence on a particular aggravating factor was required. Id. at 441-42, 852 P.2d 190. In contrast, the court held that ORS 813.010 was intended by the legislature to embody a single offense that could be proved by different sets of circumstances. Id. at 446, 852 P.2d 190.
At issue in this case is whether the Portland city council intended, in enacting PCC 14A.40.050, that each activity constitutes a separate offense, or whether the council intended that each activity constitutes an alternative method of proving the same offense.
Because our task is to discern the intent of the city council in that regard, we first examine the language of the ordinance itself. See Comcast of Oregon II, Inc. v. City of Eugene, 211 Or.App. 573, 584, 155 P.3d 99 (2007) (local ordinances are construed by applying the interpretive method prescribed by PGE v. Bureau of Labor and Industries, 317 Or. 606, 610-12, 859 P.2d 1143 (1993)). It provides, in part, that "`prostitution procurement activity' means any conduct by any person that constitutes a substantial step in furtherance of an act of prostitution." The ordinance provides a nonexclusive list of activities that violate the ordinance. Based on the language of the ordinance, we conclude that the city council did not intend to create separate offenses. Rather, the activities listed in the ordinance are like the sets of circumstances described in ORS 813.010; that is, evidence of a particular activity is a discrete circumstance tending to prove an element of the offensethe element of a substantial step in furtherance of the act of prostitution. We conclude, therefore, that each activity listed in PCC 14A.40.050 does not constitute a separate element or a separate crime. Rather, each activity under the ordinance constitutes a separate set of circumstances under which the single offense of unlawful prostitution procurement activities may be committed. It follows that, because each activity is an alternative way to prove a single offense, the trial court did not err in refusing to give defendant's requested instructions.
Affirmed.