Argued and submitted December 20, 1984, affirmed May 22, reconsideration denied July 19, petition for review denied August 20, 1985 (299 Or 663)

# STATE OF OREGON,
*Respondent,*

*v.*

# RONALD MAURICE ROMIG,
*Appellant.*

## (10-83-05673; CA A32379)

700 P2d 293

Helen I. Bloch, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Salem, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Defendant was indicted for violation of the Oregon Racketeer Influenced and Corrupt Organization Act (RICO), ORS 166.715-166.735, and for the separate offenses of fraudulently obtaining a signature, ORS 165.042, and obtaining execution of documents by deception. ORS 165.102. Defendant demurred to the indictment on the grounds that: (1) RICO is unconstitutionally overbroad in that it reaches expression protected under Article I, section 8, of the Oregon Constitution; (2) RICO is vague, in violation of Article 1, sections 20 and 21, of the Oregon Constitution; and (3) the indictment failed to meet the statutory requisites of specificity required by ORS 132.550 and ORS 135.630(6). The demurrer was overruled, and defendant was tried on stipulated facts and convicted on all counts. On appeal he argues that the court erred in overruling the demurrer. We affirm.

The indictment alleges six counts. In 1981, Don Gabrielson and James Douglas formed a business, later incorporated as Cottonwood Investment Corporation. The corporation purchased deeds from people who were unable to make their mortgage payments. Defendant, acting on behalf of the corporation, advised Mr. Thille that, if he would deed his property to the corporation, any future foreclosures on the property would be against the corporation and that his credit rating would not be damaged. Defendant knew that the representation was false but transmitted it to Thille in order to persuade him to execute the deed to the corporation. Thille, in reliance on the false information, deeded the property to the corporation for $300.

Defendant misrepresented to Jerry and Ann Holvey that Cottonwood Investments would take all necessary steps to stop a foreclosure on their property and that any foreclosure that did occur would be against the corporation. In reliance on the misrepresentations, the Holveys deeded their property to the corporation for $300. Jerry Pelroy executed a deed to other property to Cottonwood Investments for $100. Defendant misrepresented to him that any future foreclosure would be against the corporation and that his credit rating would not be affected. Pelroy was also told that the Oregon Department of Veterans Affairs would be contacted and his

veteran's loans made current. Defendant made similar misrepresentations to three other couples, which resulted in the execution of three additional deeds to Cottonwood.

Defendant was charged with the violation of ORS 166.720(2) and (3), which provide, in pertinent part:

"(2) It is unlawful for any person, through a pattern of racketeering activity * * * to acquire or maintain, directly or indirectly, any interest in or control of any real property or enterprise.

"(3) It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity * * *."

A "pattern of racketeering activity" is defined by ORS 166.715(4):

" 'Pattern of racketeering activity' means engaging in at least two incidents of racketeering activity * * *."

The "racketeering activities" charged in this case are defined by ORS 166.715(6):

" 'Racketeering activity' means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce or intimidate another person to commit:

"(a) Any conduct which constitutes a crime, as defined in ORS 161.515, under any of the following provisions of the Oregon Revised Statutes:

"* * * * *

"(P) ORS * * * 165.042 * * * relating to forgery and related offenses;

"(Q) ORS 165.080 to 165.109, relating to business and commercial offenses[.]"

The predicate offenses specifically charged under ORS 166.715(6)(a)(P) and (Q) are fraudulently obtaining a signature, ORS 165.042, and obtaining execution of documents by deception. ORS 165.102. ORS 165.042 provides in part:

"(1) A person commits the crime of fraudulently obtaining a signature if, with intent to defraud or injure another, he obtains the signature of a person to a written instrument by knowingly misrepresenting any fact."

ORS 165.102 provides in part:

"(1) A person commits the crime of obtaining execution of documents by deception if, with intent to defraud or injure another or to acquire a substantial benefit, he obtains by means of fraud, deceit or subterfuge the execution of a written instrument affecting or purporting to affect the pecuniary interest of any person."

Counts I and II of the indictment charge a violation of ORS 166.720(2). The predicate offenses charged are violations of ORS 165.042 and 165.102, respectively. Each count lists the six transactions involving the execution of deeds to the corporation. Counts III and IV charge a violation of ORS 166.720(3). Again, the predicate offenses charged are violations of ORS 165.042 and 165.102, respectively, and the six transactions are listed for each count. Count V charges a violation of ORS 165.042. Count VI charges a violation of ORS 165.102.

We first consider defendant's assertion that the two predicate offenses, fraudulently obtaining a signature and execution of a document by deception, violate his right to speak freely "on any subject whatever" and are therefore void under Article I, section 8, of the Oregon Constitution.[1] As a preliminary matter, we note that the statutes are not directed to the subject of any opinion or communication. Rather, they are intended to prevent the effect of obtaining property or something else of value by means of fraud or misrepresentation. Article I, section 8, does not foreclose the legislature from prohibiting actions which might produce that effect. *See State v. Robertson,* 293 Or 402, 412, 649 P2d 569 (1982); *see also State v. Garcias,* 296 Or 688, 679 P2d 1354 (1984). However, some of the proscribed means of producing the prohibited effect may involve speech. Fraud, deception and misrepresentation all commonly occur by one person's communicating to another. Accordingly, we cannot give the statutes a narrowing construction which would avoid the speech issue. We must therefore determine whether the statutes are overbroad

---

[1] Or. Const, Art. I, § 8, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

because by their terms they punish speech which the legislature may not constitutionally prohibit.[2] One category of unprotected speech is "the use of words in the course of what undisputedly would have been a conventional crime when Oregon's Bill of Rights was adopted in 1859, or in the course of similar kinds of conventional crimes that lawmakers may from time to time enact." *State v. Robertson, supra,* 293 Or at 433. We now look at conventional crimes of 1859 which are historical analogs of ORS 165.042 and ORS 165.102.

"False pretenses" was a crime first enacted by the British parliment in 1757 to punish "all persons who knowingly and designedly, by false pretense or pretenses, shall obtain from any person or persons, money, goods, wares, or merchandizes, with intent to cheat or defraud any person or persons * * *." 30 Geo II (1757); *see* Hall, *Theft, Law and Society* 40-41 (2d ed 1952). The fraudulent obtaining of possession, but not title, to property constituted "larceny by trick" at common law. *See* Hall, *Theft, Law and Society, supra,* 40-45.

Oregon territorial legislation provided:

"If any person shall designedly, by any false pretense, or by any privy or false token, and with intent to defraud, obtain from any other person any money, or goods, wares or merchandise, or shall obtain with such intent the signature of any person, to any written instrument, the false making whereof would be punishable as forgery, he shall be subject to imprisonment in the penitentiary not more than five years, nor less than one year." Or Laws 1854, ch 4, § 30.

The statute was reenacted when Oregon became a state and remained in substance a part of the criminal statutes until 1971.[3] The Oregon statute went beyond the original English

---

[2] These statutes are different from statutes which by their terms only prohibit an effect without specifying the means of achieving that effect. A defendant cannot attack the latter kind of statute on its face for violating Article I, section 8, but may show that the statute could not be constitutionally applied to the particular words or expression the defendant is accused of using. *See State v. Robertson, supra,* 293 Or at 417.

[3] General Laws of Oregon, Crim Code, § 559 (Deady 1845-1864); General Laws of Oregon, Crim Code, § 564 (Deady and Lane 1843-1872); Hill's Annotated Laws of Oregon, § 1777 (1887); Bellinger and Cotton, Annotated Codes and Statutes of Oregon, § 1812 (1902); Lord's Oregon Laws, § 1964 (1910); Oregon Laws, § 1964 (Olson 1920);

definition of false pretenses in that it also made criminal the fraudulent obtaining of a signature to a written instrument.

■ In 1971, Oregon's substantive criminal law was substantially revised. The portion of the original false pretenses statute that proscribed fraudulent obtaining of a signature to a written instrument became ORS 165.042. *See Commentary to Proposed Oregon Criminal Code* 201, § 158 (1971). That portion of the original territorial legislation remains virtually unchanged from 1854 to this date. The speech which ORS 165.042 proscribes is no more than that which the previous crime of false pretenses proscribed. A "misrepresentation" is comparable to a "false pretense." False pretenses was undoubtedly a conventional crime in 1859. Although the reach of ORS 165.042 may be somewhat broader, it is well within the general outlines of the earlier crime. The statute does not reach protected speech and, therefore, is not overbroad.

■■ ORS 165.102, obtaining execution of documents by deception, is a new provision which was derived from the Model Penal Code. *See Commentary to Proposed Oregon Criminal Code* 210, § 168. The drafters of the Model Penal Code intended the section to punish the same conduct involved in theft by deception when the actor's intention is to obtain pecuniary benefits which are not normally considered "property." *ALI Model Penal Code and Commentary* 365, § 224.14 (1980). In addition, ORS 165.102 is intended to be broader than ORS 165.042 in that it is directed at fraudulently obtaining execution of a document affecting a pecuniary interest without necessarily requiring a signature to give validity to the document.[4] *See Commentary to Proposed Oregon Criminal Code* 210, § 168.

---

Oregon Code 1930, § 14-334; OCLA, § 23-537 (1940); ORS 165.205 (*repealed by* Or Laws 1971, ch 743, § 432).

[4] We have some difficulty in conceiving of a fraudulent obtaining of the execution of an instrument affecting a pecuniary interest when the execution of the instrument would neither require the obtaining of a signature nor result in the obtaining of some form of property. In *State v. Miller,* 192 Or 188, 233 P2d 786 (1951), the Supreme Court held that the fraudulent obtaining of a loan guarantee did not constitute the crime of false pretenses, because the benefit of the guarantee did not constitute property. The defendant could not be charged with obtaining a signature to a written instrument, because the guarantee was oral. The same act would not be punishable under ORS 165.102, because ORS 165.102 requires the execution of a written instrument.

■ The crime of obtaining execution of documents by deception extends beyond Oregon's original version of false pretenses, because the object of the deception need not be the obtaining of property or a signature. The fraudulent obtaining of a written instrument that affects a pecuniary interest when the instrument neither requires a signature nor represents property was not punishable as a crime in Oregon until the enactment of ORS 165.102 in 1971. Article I, section 8, does not limit legislative power to the specific proscriptions found in territorial legislation. The intent and means proscribed by ORS 165.102, to injure or acquire a substantial benefit by means of fraud, deceit or subterfuge, are the same intent and means proscribed by more traditional crimes, such as larceny by trick and false pretenses. Similarly the focus of the statute is to avoid harm to the pecuniary interest of any person.

■ More significant than the similarity of the effects the former and present statues tried to prevent, the kind of speech prohibited now is the same kind of speech which pre-1859 criminal laws prohibited. Article I, section 8, is directed to the protection of *speech;* it does not prohibit the legislature from extending criminal sanctions to *acts* which previously were unpunished. So long as the speech prohibited is comparable to speech which was prohibited in 1859, the Legislature may punish additional effects of that speech without violating Article I, section 8.

■ ■ ORS 165.102 prohibits the use of "fraud, deceit or subterfuge" in order to achieve the prohibited effects. Those kinds of speech are very close to the speech which the pre-1859 crime of false pretenses forbade. That the object of the crime is no longer tied to conventional notions of property does not change the nature of the speech by which the crime is effected. At the very least, ORS 165.102 is a conventional crime which is similar to a crime which existed in 1859. There is no constitutional privilege fraudulently to misrepresent facts in order to obtain another's property, signature to a written instrument or execution of a written instrument affecting a pecuniary interest. All of defendant's hypotheticals involve such misrepresentations. ORS 165.042 and ORS 165.102 are not overbroad and are constitutional under Article I, section 8.

■ Defendant next argues that the act as a whole is unconstitutionally vague.[5] Defendant concedes that challenges against the federal RICO statutory scheme on due process grounds have been unsuccessful. *See, e.g., United States v. Swiderski,* 593 F2d 1246 (DC Cir 1978); *United States v. Campanale,* 518 F2d 352 (9th Cir 1975); *United States v. Parness,* 503 F2d 430 (2d Cir 1974). Defendant asserts that the Oregon scheme is more vulnerable to a vagueness attack because of the following distinctions between the federal act and the Oregon act: (1) unlike the federal law, the Oregon statute includes all inchoate offenses under the provisions of ORS 166.715(6); (2) the Oregon definition of racketeering activity includes a greater number of listed offenses than the federal version; (3) ORS 166.715(6)(b) also includes predicate offenses listed in the federal act; (4) the Oregon definition of "enterprise" includes both licit and illicit enterprises (*see* ORS 166.715(2)); and (5) the Oregon definition of "pattern of racketeering activity" is more expansive than the federal statute.

■ ■ A criminal statute is unconstitutionally vague when it is not sufficiently definite to inform those who are subject to it what conduct on their part will render them liable to its sanctions. *State v. Johnson,* 50 Or App 33, 36, 621 P2d 677 (1981); *State v. Tucker,* 28 Or App 29, 32, 558 P2d 1244, *rev den* 277 Or 491 (1977). "[A] statute which defines criminal conduct is void for vagueness if language describing elements of the offense is so elastic that men of common intelligence must necessarily guess at its meaning." *State v. Sanderson,* 33 Or App 173, 176, 575 P2d 1025 (1978). All of defendant's arguments concerning vagueness deal with the expansiveness of the statute rather than its lack of definiteness. Although RICO is complicated because of its many definitions and cross-references to other crimes, it is not indefinite or vague.

■ Finally, defendant contends that the indictment was not specific enough to survive demurrer. Under ORS

---

[5] "Vagueness" is a catchword for a number of asserted constitutional violations, including the prohibition of *ex post facto* laws, Or Const, Art I, § 21; *State v. Hodges,* 254 Or 21, 27, 457 P2d 491 (1969), and the prohibition against standardless and unequal application of the laws. Or Const, Art I, § 20; *see State v. Robertson, supra.* Vague statutes may also violate the federal Due Process Clause. US Const, Amend XIV.

135.630(6), a defendant may demur to an accusatory instrument which is not definite and certain. ORS 132.550(7) provides that an indictment shall substantially contain: "[a] statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended." An indictment in the language of the statute is sufficiently specific and, as a general rule, will survive a demurrer. *State v. Tracy,* 246 Or 349, 425 P2d 171 (1967).

 Defendant argues that, because of the "vagueness" and the scope of the act, we should require greater specificity in the charging instrument than we usually do. The four counts of racketeering charged in the indictment all follow the same general format. Each tracks the language of RICO and then precisely alleges the nature of the predicate offense charged. For example, one of the six listed predicate offenses charged reads:

> "The defendant on or about the 28th day of May, 1982, with the intent to injure and defraud Jerry Holvey and Ann Holvey, obtained a signature of Jerry Holvey and Ann Holvey, to a written instrument by knowingly misrepresenting facts * * *."

Each of the predicate offenses listed in all four RICO counts is equally specific. Defendant's argument concerning specificity of the indictment is really a repetition of his argument concerning vagueness of the statute. The indictment is sufficient under ORS 132.550(7) and ORS 135.630(6).[6]

Affirmed.

---

[6] Defendant also argues, for the first time on appeal, that the court erred in overruling his demurrer to Count I of the indictment, because "the facts stated do not constitute an offense." ORS 135.630(4). Count I charges the same series of transactions as the other three racketeering charges. The "pattern of racketeering activity" is alleged to have occurred "between the 2nd day of November, 1981, and the 19th day of June, 1982." Only one of the transactions occurred before June, *1982.* Comparing Count I with the identical series of transactions in Counts II, III and IV alleged to have occurred between the "2nd day of November, 1981, and, the 19th day of June, *1983,*" it is apparent that the defect is merely a scrivener's error.