Argued and submitted December 20, 1985, reversed February 26, 1986

STATE OF OREGON,
*Respondent,*

*v.*

DALE R. KINCAID,
*Appellant.*

(C 83-05-32440; CA A34510)

714 P2d 624

Timothy P. Alexander, Beaverton, argued the cause for appellant. With him on the brief was Myatt, Bell & Alexander, P.C., Beaverton.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were

Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Warden, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals his conviction for unlawful racketeering activity in violation of ORS 166.720(3), a section of the Oregon Racketeer Influenced and Corrupt Organization Act (ORICO). ORS 166.720(3) provides, as relevant:

> "It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity * * *."

A "pattern of racketeering activity" means "engaging in at least two incidents of racketeering conduct" under circumstances defined in ORS 166.715(3). "Racketeering activity" is defined by ORS 166.715(5) as meaning

> "* * * to commit, to attempt to commit, to conspire to commit, or to solicit, coerce or intimidate another person to commit:
>
> "(a) [a]ny conduct which constitutes a crime * * *"

under myriad statutes, including those proscribing theft. ORS 166.715(5)(a). The crimes underlying the pattern of racketeering activity are commonly referred to as "predicate offenses," and at least two such offenses, as well as the racketeering elements defined in the statute, must be proven by the state to convict a defendant under ORS 166.720(3).

The essence of the state's case here is that defendant and others operated a mobile home business and committed numerous first degree thefts by deception in connection with customer funds. *See* ORS 164.055, 164.085. At trial, the state put on evidence of more than 30 thefts. Defendant's first assignment is that the trial court erred by denying his demurrer to the indictment, which alleged in material part:

### "COUNT III

> "As part of the same acts and transactions alleged in Counts I and II herein, the defendant is accused by the Grand Jury of Multnomah County, Oregon, by this indictment of the crime of

### UNLAWFUL RACKETEERING ACTIVITY

> committed as follows:
>
> "The said defendant, between May 25, 1980 and May 25, 1983, in the County of Multnomah, State of Oregon, did

unlawfully and knowingly, while employed by and associated with an enterprise, conduct and participate, directly and indirectly, in such enterprise through a pattern of racketeering activity, to-wit: thefts in the first degree, contrary to the Statutes in such cases made and provided and against the peace and dignity of the State of Oregon."[1]

Defendant argues that, although the indictment tracked the language of the ORICO statute and identified theft as the *kind* of predicate offense, it was defective because it failed to describe the *incidents* of theft which the state intended to prove. Therefore, according to defendant, the indictment failed, *inter alia,* to give him sufficient information to enable him to prepare a defense.

We have had one previous occasion to consider the sufficiency of an ORICO indictment. In *State v. Romig,* 73 Or App 780, 700 P2d 293, *rev den* 299 Or 663 (1985), the defendant was charged with racketeering by virtue of his involvement in six predicate offenses. We rejected the defendant's challenge to the indictment and stated:

"* * * An indictment in the language of the statute is sufficiently specific and, as a general rule, will survive a demurrer. *State v. Tracy,* 246 Or 349, 425 P2d 171 (1967).

"Defendant argues that, because of the 'vagueness' and the scope of the act, we should require greater specificity in the charging instrument than we usually do. The four counts of racketeering charged in the indictment all follow the same general format. Each tracks the language of RICO and then precisely alleges the nature of the predicate offense charged. For example, one of the six listed predicate offenses charged reads:

" 'The defendant on or about the 28th day of May, 1982, with the intent to injure and defraud Jerry Holvey and Ann Holvey, obtained a signature of Jerry Holvey and Ann Holvey, to a written instrument by knowingly misrepresenting facts * * *.'

"Each of the predicate offenses listed in all four RICO counts is equally specific. Defendant's argument concerning specificity of the indictment is really a repetition of his argument concerning vagueness of the statute. The indictment is sufficient under ORS

---

[1] Count II was dismissed by the state before trial. The jury acquitted defendant of the offense charged by Count I and convicted him under Count III.

132.550(7) and ORS 135.630(6)." 73 Or App at 789. (Footnote omitted.)

Because it precisely alleged the nature of each of the predicate offenses, the indictment in *Romig* was specific in exactly the way that defendant contends the indictment here should have been and is not. The state notes, correctly, that in *Romig* we upheld an indictment "that pleaded the predicate offenses as if they were a substantive count," but that we did not decide "whether less pleading also would have sufficed." That undecided question is the one before us here.

The state makes three basic arguments why the indictment is sufficient. First, it argues that the "essence of a RICO violation rests not in its predicate offenses but rather in its *pattern* and its *enterprise* aspects," that the "predicate offenses, although elements of the crime, are not * * * the gravamen of RICO, any more than an intended specific theft on burglarized premises forms the gravamen of a burglary," and, therefore, "if a RICO pleading sets forth the basic nature of the racketeering activity and denominates the type of predicate offenses involved, it succeeds in performing the basic function of a criminal pleading, *i.e.,* notice." (Emphasis the state's.)

The state's second argument is that recent cases have held that the pretrial discovery available to criminal defendants has reduced the need for particularity in charging instruments. *See, e.g., State v. Shadley/Spencer/Rowe,* 16 Or App 113, 517 P2d 324 (1973). Here, the state gave defendant access to several volumes of data pertaining to the activities alleged against him and the other participants in the enterprise, and it made it clear that it intended to call as witnesses all of the complainants identified in the discovery material. Finally, the state argues that there is no reason why traditional principles, *e.g.,* that indictments which follow the language of the inculpating statute are sufficient, should be inapplicable here. Putting its arguments together, the state concludes that the indictment satisfied the requirement of ORS 132.550(7) of stating the "acts constituting the offense in ordinary and concise language * * * and in such manner as to enable a person of common understanding to know what is intended."

Although no previous Oregon case is completely

apposite, the case that provides the most guidance is *State v. Sanders,* 280 Or 685, 572 P2d 1307 (1977), where the defendant demurred to a burglary indictment because it did not specify the crime the defendant intended to commit when he made his unlawful entry. The Supreme Court reversed the trial court's overruling of the demurrer and explained:

"In [*State v. Smith,* 182 Or 497, 188 P2d 998 (1948),] we also recognized that in determining the sufficiency of indictments we should consider Art I, § 11 of the Oregon Constitution. That section provides that persons accused of crimes have the right to 'demand the nature and cause of the accusation against him.'

"We also observed in that case:

" 'In an indictment for an offense created by statute, it is usually sufficient to describe the offense in the words of the statute. * * * Sometimes, however, a statement of the particular circumstances of the crime is necessary in order to charge the defendant with having committed specific acts bringing him within the condemnation of the statute, and in those cases the indictment must be direct and certain as to such circumstances. * * *.' (Citations omitted.)

"* * * * *

"The state has not pointed out any way in which it would be prejudiced by requiring it to continue to specify the crime it charges the defendant intended to commit, other than having placed upon it the usual burden of alleging and proving each element of the crime charged.

"* * * * *

"The state argues and the Court of Appeals reasoned that the omission of an allegation of the particular crime intended did not work a hardship on the defendant because of his pretrial discovery rights. In some instances the availability of discovery can remedy a deficiency in the specificity of the indictment; for example, *State v. Shadley/Spencer/Rowe,* 16 Or App 113, 517 P2d 324 (1973) (failure to name the person to whom drugs furnished). However, the pretrial discovery available to the defendant in this case would not enable him to know what criminal intent the state was going to attempt to prove. ORS 135.805 and following. Statements of witnesses, which are discoverable, might or might not give the defendant a clue, but one charged with a felony is entitled to more than a

clue to what the state contends are the elements of the crime charged." 280 Or at 688-90. (Footnote omitted.)

In response to *Sanders,* the state contends in its brief:

"* * * Burglary, like RICO, contains a crime within a crime, and thus it is reasonable to require that a pleading in each instance state what the underlying crime is. However, that is not to say that the underlying crime must be pled with the same degree of specificity as if it were the offense charged. Rather, as *Sanders* points out, it is enough that the name of the offense be given; it is unnecessary to allege all the additional elements of the intended crime. *Id.,* 280 Or at 690."

There are problems with the analogy that the state draws. To convict a defendant under ORICO, the state must prove that he *committed* the two predicate crimes and must prove all of their elements; to convict of burglary, the only element of the "crime within a crime" that the state must prove is the defendant's intent to commit it. ORS 164.215. In any event, defendant does not argue that the indictment in this case was insufficient simply because it did not recite the elements of theft in the first degree. His contention is that the indictment was demurrable, because it did not particularize the instances of theft in the first degree upon which the state intended to base its case.

We find two of the court's points in *Sanders* to be relevant here. The first is its conclusion that an indictment in the language of the proscribing statute is not necessarily sufficient if the statutory language is not enough in itself to apprise the defendant of "particular circumstances" that make his conduct criminal. The second significant point in *Sanders* is that an unspecific indictment cannot be saved by the availability of discovery if the discovery is unlikely to inform the defendant of the specific criminal conduct the state intends to prove. Those points seem to us to be even more germane to an indictment in an ORICO case than to an indictment for burglary. Although, as the state points out, both offenses in a sense involve "crimes within crimes," the usual burglary case consists of a discrete event accompanied by a discrete intent; conversely, ORICO cases, or at least this ORICO case, consist of multiple episodes in an ongoing pattern, and any two of those episodes can be selected by the prosecution—and the factfinder—as the basis for convicting the defendant. It is manifest to us that the defendant has the

right to be informed of all the specific episodes from which the prosecution can make its selection.

The state's argument that pretrial discovery rather than the charging instrument can be the source of that information is unconvincing. As this case illustrates, when there are a large number of predicate offenses, discovery amounts to a poverty of riches. The district attorney stated at the hearing on defendant's demurrer:

> "[Defendant's] complaint seems to be that [the discovery is] too much to read * * *. It is not the State's fault the case is so big. If the defendants had shown more discrimination in the numbers of people they had dealt with over the years, the case would not be so big."

That statement misses the point by 180 degrees. The prosecutor may not have been responsible for the number of predicate offenses which she hoped to prove, but she did have the responsibility to apprise defendant of the charge against which he had to defend. The very volume of the discovery material, together with the large number of predicate offenses on which the state can potentially rely in ORICO prosecutions, is what makes discovery inadequate as an alternative to notifying an ORICO defendant by indictment of the "acts constituting the offense in ordinary and concise language * * * in such manner as to enable a person of common understanding to know what is intended." Stated differently, discovery is not a satisfactory substitute for specificity in indictments in ORICO cases, because effective notice is as much obscured by too much information as it is denied by too little information. Discovery can of course serve important purposes in the ORICO setting, but providing basic notice of the charge the defendant must be prepared to refute is not among them.

We also find no merit to the argument that particularity in the allegation of predicate offenses is rendered unnecessary because the gravamen of an ORICO charge is the pattern of activity rather than the predicate offenses. The fact remains that the state must prove guilt of the predicate offenses in order to establish the racketeering charge. Finally, as in *State v. Sanders, supra,* there is no possible prejudice to the state in requiring it to particularize the underlying offenses in the indictment. We conclude that, to withstand a demurrer, an ORICO indictment must allege the predicate

offenses with at least as much specificity as the indictment in *State v. Romig, supra,* did, in addition to complying with other requirements for indictments. We therefore agree with defendant that the trial court erred by overruling his demurrer.[2] Our disposition of defendant's first assignment makes it unnecessary for us to reach the others.

Reversed.

---

[2] In addition to the indictment's failure to discharge the notice function, other vices may inhere in a charging instrument which does not particularize the predicate offenses of an ORICO violation. As defendant notes, when there is an unparticularized indictment and a general verdict of guilty, it is virtually impossible to know whether the grand jury that indicted and the jury that convicted even had the same conduct in mind, let alone had based their decisions on the same conduct. *See State v. Erbs,* 9 Or App 95, 496 P2d 38 (1972). The lack of particularity could also cause problems in the trial of ORICO cases and in their appellate review. One of the functions of indictments is "to inform the court of the facts charged so that it may determine whether or not they are sufficient to support a conviction." *State v. Smith,* 182 Or 497, 501, 188 P2d 998 (1948). In an ORICO case where there are numerous predicate offenses on which the prosecution does or could rely, it might be very difficult for a trial judge to know what offenses the defendant is referring to in a motion for a directed verdict or a motion to withdraw particular offenses from the jury's consideration, if the offenses are not described in the indictment. The same problem would impair our review in an appeal when the trial court's rulings on motions are assigned as error.