Argued and submitted July 27, 1999, restitution order reversed and remanded for
reconsideration; otherwise affirmed April 4, 2001

# STATE OF OREGON,
*Respondent,*

*v.*

# RANDAL LEE SCHWARTZ,
*Appellant.*

# (C940322CR; CA A91702)

21 P3d 1128

Marc Sussman argued the cause and filed the briefs for appellant.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong Judge.

DEITS, C. J.

**DEITS, C. J.**

Defendant appeals from a judgment of conviction of three counts of computer crime. ORS 164.377. We reverse the order of restitution, but otherwise we affirm.

Because a jury found defendant guilty, we set out the facts in the light most favorable to the state. *State v. Tucker*, 315 Or 321, 325, 845 P2d 904 (1993). Defendant worked as an independent contractor for Intel Corporation beginning in the late 1980s. Defendant's tasks included programming, system maintenance, installing new systems and software, and resolving problems for computer users. In late 1991 or early 1992, defendant began working in Intel's Supercomputer Systems Division (SSD). SSD creates large computer systems that can cost millions of dollars and are used for applications such as nuclear weapons safety. Intel considers the information stored on its SSD computers to be secret and valuable. Each person using SSD computers must use a unique password in order to gain access to electronic information stored there. Passwords are stored in computer files in an encrypted or coded fashion.

In the spring of 1992, defendant and Poelitz, an Intel systems administrator, had a disagreement about how defendant had handled a problem with SSD's e-mail system. The problem was ultimately resolved in an alternative manner suggested by Poelitz, which upset defendant and made him believe that any future decisions he made would be overridden. Accordingly, defendant decided to terminate his SSD contract with Intel. As defendant himself put it, he "hadn't left SSD on the best of terms." At that time, his personal passwords onto all but one SSD computer were disabled so that defendant would no longer have access to SSD computers. His password onto one SSD computer, Brillig, was inadvertently not disabled.

After defendant stopped working with SSD, he continued to work as an independent contractor with a different division of Intel. In March 1993, Brandewie, an Intel network programmer and systems administrator, noticed that defendant was running a "gate" program on an Intel computer called Mink, which allowed access to Mink from computers

outside of Intel. "Gate" programs like the one defendant was running violate Intel security policy, because they breach the "firewall" that Intel has established to prevent access to Intel computers by anyone outside the company. Defendant was using the gate program to use his e-mail account with his publisher and to get access to his Intel e-mail when he was on the road. When Brandewie talked to defendant about his gate program, defendant acknowledged that he knew that allowing external access to Intel computers violated company policy. Even though defendant believed that precautions he had taken made his gate program secure, he agreed to alter his program.

In July 1993, Brandewie noticed that defendant was running another gate program on Mink. This program was similar to the earlier gate program and had the same effect of allowing external access to Intel computers. Defendant protested that changes he had made to the program made it secure, but Brandewie insisted that the program violated company policy. At that point, defendant decided that Mink was useless to him without a gate program, so he asked that his account on that computer be closed. Defendant then moved his gate program onto an Intel computer called Hermeis. Because that computer was too slow for him, defendant finally moved his gate program onto the SSD computer Brillig.

In the fall of 1993, defendant downloaded from the Internet a program called "Crack," which is a sophisticated password guessing program. Defendant began to run the Crack program on password files on various Intel computers. When defendant ran the Crack program on Brillig, he learned the password for "Ron B.," one of Brillig's authorized users. Although he knew he did not have the authority to do so, defendant then used Ron B.'s password to log onto Brillig. From Brillig, he copied the entire SSD password file onto another Intel computer, Wyeth. Once the SSD password file was on Wyeth, defendant ran the Crack program on that file and learned the passwords of more than 35 SSD users, including that of the general manager of SSD. Apparently, defendant believed that, if he could show that SSD's security had gone downhill since he had left, he could reestablish the respect he had lost when he left SSD. Once he had cracked

the SSD passwords, however, defendant realized that, although he had obtained information that would be useful to SSD, he had done so surreptitiously and had "stepped out of my bounds." Instead of reporting what he had found to anyone at SSD, defendant did nothing and simply stored the information while he went to teach a class in California.

After he returned from California, defendant decided to run the Crack program again on the SSD password file, this time using a new, faster computer called "Snoopy." Defendant thought that, by running the Crack program on the SSD password file using Snoopy, he would have "the most interesting figures" to report to SSD security personnel. On October 28, 1993, Mark Morrissey, an Intel systems administrator, noticed that defendant was running the Crack program on Snoopy. At that point, Morrissey contacted Richard Cower, an Intel network security specialist, for advice about how to proceed. In investigating defendant's actions, Morrissey realized that defendant had been running a gate program on the SSD computer Brillig, even though defendant's access should have been canceled. On October 29, 1993, Cower, Morrissey, and others at Intel decided to contact police.

■ Defendant was charged with three counts of computer crime, ORS 164.377,[1] and was convicted of all three counts by a jury. He appeals, raising six assignments of error.[2] In his first assignment of error, defendant challenges

---

[1] The text of ORS 164.377 is set out later in the opinion. 173 Or App at 314-15.

[2] We note that defendant has not fully complied with the requirement of the Oregon Rules of Appellate Procedure that an appellant set out standards of review. When defendant filed his brief, ORAP 5.45(6) (1998) provided, in part:

"At the beginning of each argument the appellant shall identify the applicable standard of review, followed by citation to the statute, case law or other legal authority for that standard of review." (Footnote omitted.)

Since defendant filed his brief, the Oregon Rules of Appellate Procedure have been amended. A similar provision is now found at ORAP 5.45(5), which provides:

"Under the subheading 'Standard of Review,' each assignment of error shall identify the applicable standard or standards of review, supported by citation to the statute, case law, or other legal authority for each standard of review." (Footnote omitted.)

We emphasize that this provision of the appellate rules is not a mere technicality or formality. This requirement serves the purpose of causing the parties to frame their arguments appropriately to the types of rulings being challenged. It also helps to identify any differences that the parties may have regarding the proper

the trial court's order denying his motion to suppress evidence of statements defendant made while the police were searching his home. On November 1, 1993, the police searched defendant's residence pursuant to a search warrant. No incriminating evidence was discovered during the search. However, while the search warrant was being executed, one of the police officers interviewed defendant. Defendant moved to suppress evidence of statements that he made during that interview. Among other things, defendant sought to controvert "the good faith, accuracy and truthfulness of the affiant * * *." ORS 133.693(1). The trial court denied the motion.

On appeal, defendant advances several grounds in support of his contention that the evidence should have been suppressed. First, defendant challenges the "good faith, accuracy and truthfulness of the affiant" whose statements led to the issuance of the search warrant. *See* ORS 133.693(1) (in a proceeding on a motion to suppress evidence, a party may contest the evidence presented to establish probable cause for a search). Second, he argues that the facts in the affidavit supporting the warrant were insufficient to support probable cause. Third, he contends that the warrant was overly broad. Finally, he asserts that the warrant was improperly executed. Defendant does not argue that his statements were not made voluntarily or that his *Miranda* rights were violated. Defendant argues only that his statements were obtained during the execution of a warrant that was, for the reasons outlined above, defective and, accordingly, the statements should have been suppressed as the fruit of an illegal search.

It is unnecessary to address defendant's contentions regarding the defects in the warrant or its execution because, even assuming that the warrant or its execution were defective, we agree with the state's argument that suppression of defendant's statements is not warranted, because the statements were not obtained by exploitation of the search.[3]

scope of review, thereby allowing the court to explore the issue further at oral argument.

[3] The state argues alternatively that defendant's statements should not be suppressed, because defendant waived any objection to the search at trial when he himself introduced evidence that the search had not produced any incriminating

 Unlawful police conduct may require suppression of evidence later obtained after a defendant's consent depending upon the nature of the connection between the unlawful police conduct and the obtaining of the evidence sought to be suppressed. *State v. Rodriguez*, 317 Or 27, 39, 854 P2d 399 (1993). Where there is no causal connection between the illegal police conduct and the later-obtained evidence, suppression is not required. *Id.* Further, a simple "but-for" causal connection does not require suppression; suppression is required only when the police have "exploited" their prior unlawful conduct in order to obtain evidence by otherwise lawful means. *Id.* at 39-40. For example, as we explained in *State v. Stanley*, 139 Or App 526, 535, 912 P2d 948 (1996), *rev'd on other grounds* 325 Or 239, 935 P2d 1202 (1997), "exploitation occurs when unlawful police conduct reveals information that focuses police attention on the defendant and prompts them either to seek the defendant's consent or to ask questions leading to consent." The illegality must give the police more than the opportunity to seek consent. It must also provide a reason for the police to ask for consent.

 In this case, the allegedly unlawful police conduct involves how the search warrant was obtained and executed. However, nothing about that conduct focused police attention on defendant or prompted the police to seek his consent to be interviewed. Even before the warrant was obtained, the police were interested in investigating and talking to defendant. Defendant does not argue that, had the warrant not been obtained, the police would not have sought to interview him. Moreover, the record does not indicate that anything found during execution of the warrant caused the police to interview defendant or caused the police to ask questions that they would not otherwise have asked. In fact, the police asked to interview defendant at the same time they began to search his home, which supports an inference that the police would have interviewed him regardless of any results of the search. Nothing incriminating was discovered during the search that might have led the police to ask questions of

---

evidence and when he either repeated statements he had made during the search or acknowledged that he had made such statements. In view of our conclusion that the statements were not obtained by exploitation of the search, we do not address this alternative argument.

defendant that they would not otherwise have asked. In this case, there is *no* causal connection, "but for" or otherwise, between the allegedly unlawful police conduct and the obtaining of the evidence that defendant sought to have suppressed. Accordingly, the trial court did not err in denying defendant's motion to suppress.

Defendant's second and third assignments of error pertain to his demurrer. Defendant demurred to count one of the indictment, arguing, among other things, that the statute under which he was charged was unconstitutionally vague and that the indictment was not definite and certain. In count one, defendant was charged with violating ORS 164.377(3), which provides:

> "Any person who knowingly and without authorization alters, damages or destroys any computer, computer system, computer network, or any computer software, program, documentation or data contained in such computer, computer system or computer network, commits computer crime."

At the hearing on his demurrer, defendant attempted to call a witness, Kirth, who defendant's lawyer stated was an expert in the operation of computer systems and would testify about "issues raised by the statutory definitions." Defendant contended that Kirth's testimony would have aided the court in understanding the meaning of several words used in ORS 164.377(3)—namely "authorization" and "alters"—and accordingly, would have been relevant to the court's ruling on his demurrer. The state objected, arguing that a demurrer presents a purely legal issue and that consideration of facts in determining a demurrer is improper. After hearing argument, the trial court sustained the objection. Defendant argues that the trial court erred in not allowing this evidence.

■■ Defendant's apparent goal in seeking to present this evidence was to provide a factual background for the court's determination of the meaning of several statutory terms. Facts that are relevant to determining the meaning of statutory language are referred to as "legislative facts," as distinguished from the "adjudicative" or "historical" facts of a

particular case. Legislative facts "are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." *Chartrand v. Coos Bay Tavern*, 298 Or 689, 693, 696 P2d 513 (1985) (quoting OEC 201(a) Commentary (1981)). Legislative facts are used to determine what the law is or should be, not to arrive at findings about the events relevant to the particular case. *See id.* As the Supreme Court has explained, a court may take judicial notice of legislative facts in determining the meaning of a term in the constitution or in analyzing the constitutionality of a law. *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 558, 871 P2d 106 (1994). Although a court may take notice of legislative facts to aid its legal analysis, the Supreme Court has definitively held that "an evidentiary hearing is [not] *required* when analyzing an ambiguous term in the constitution or in a statute" and that "parties are not entitled as a matter of right to present evidence to demonstrate such facts." *Id.* (emphasis in original). Accordingly, here the trial court was not required to allow defendant the opportunity to present this evidence. Under the circumstances here, we conclude that the court did not abuse its discretion in sustaining the state's objection to defendant's proposed evidence.

Defendant also challenges the trial court's ultimate overruling of his demurrer. In count one of the indictment, defendant was charged as follows:

"That the above named defendant(s) on and between November 1, 1992 and November 1, 1993, in Washington County, Oregon, did unlawfully, knowingly and without authorization alter a computer and computer network consisting of Intel computers Mink and Brillig[.]"

In his demurrer to that count, defendant contended that the words "alter[ ]" and "without authorization," ORS 164.377(3), are unconstitutionally vague and that the indictment was not definite and certain.

A criminal statute is unconstitutionally vague when it "is stated in terms from which those to whom it is addressed—potential defendants, prosecutors, courts, and jurors—cannot discern what conduct the lawmaker did or did

not mean to include in the prohibition." *State v. Blocker*, 291 Or 255, 260, 630 P2d 824 (1981). *See also State v. Romig*, 73 Or App 780, 788, 700 P2d 293 (1985) ("A criminal statute is unconstitutionally vague when it is not sufficiently definite to inform those who are subject to it what conduct on their part will render them liable to its sanctions."). The prohibition against vague criminal statutes serves the dual purposes of "provid[ing] notice, with a reasonable degree of certainty, of the conduct that is prohibited" and "prevent[ing] a judge, jury, or other law enforcer from exercising uncontrolled discretion in punishing defendants." *State v. Chakerian*, 325 Or 370, 382, 938 P2d 756 (1997) (internal quotation marks omitted). If potential defendants and others can be reasonably certain about what conduct is prohibited, the statute at issue is not vague; absolute certainty is not required. *State v. Plowman*, 314 Or 157, 160, 838 P2d 558 (1992), *cert den* 508 US 974 (1993).

Defendant contends that the term "alter" in ORS 164.377(3) is unconstitutionally vague. He argues that "alter" is vague because its meaning overlaps with that of the word "access," which the legislature used in ORS 164.377(2). He also argues that, by making "alteration" of a computer a crime, the legislature has criminalized "socially tolerable" conduct as well as "socially intolerable" conduct. Defendant further argues that ORS 164.377(3) is vague because it does not require proof of harm. The state responds that ORS 164.377(3) provides reasonable certainty about what conduct is prohibited; that it was clear that defendant's conduct in particular was prohibited, necessarily defeating a facial vagueness challenge; that proof of harm is not necessary to save a law from vagueness; and that defendant's arguments confuse the concept of vagueness with the concept of overbreadth.

Defendant also contends that the phrase "without authorization" in ORS 164.377(3) is unconstitutionally vague. According to defendant, because that phrase does not identify what sort of authorization is required, or from what source it must come, it is vague. Defendant further suggests that ORS 164.377(3), as written, requires that any alteration be authorized and that such a construction is so broad as to

allow ad hoc enforcement. The state responds that only substantial certainty is required. The state observes that ORS 164.377(3) criminalizes alteration of a computer only when a person *knows* that he or she is without authorization. The state further argues that we should read ORS 164.377(3) as a whole; as such, it is sufficiently clear that the source of the authorization must be the person in control of the computer.

We agree with the state that many of defendant's arguments confuse the concepts of vagueness and overbreadth. *See State v. Robertson*, 293 Or 402, 407-08, 649 P2d 569 (1982) (distinguishing concepts); *Blocker*, 291 Or at 260 (observing that confusion between vagueness and overbreadth claims could be avoided if parties would quote the constitutional clauses on which they base their claims). In that respect, this case is like *Romig*, 73 Or App at 788, in which we stated:

> "[D]efendant's arguments concerning vagueness deal with the expansiveness of the statute rather than its lack of definiteness. Although [the statute at issue] is complicated because of its many definitions and cross-references to other crimes, it is not indefinite or vague."

Defendant's arguments that "access" and "alter" overlap and that the statute criminalizes *any* unauthorized alteration are challenges to the breadth of the statute, not its lack of definiteness, and, accordingly, are not well taken as part of a vagueness claim.

For the same reason, we reject defendant's argument that ORS 164.377(3) is unconstitutionally vague because it reaches socially tolerable conduct as well as socially intolerable conduct. We considered a similar argument in *City of Portland v. Johnson*, 59 Or App 647, 651 P2d 1384 (1982), *rev den* 294 Or 492 (1983), in which the crux of the defendant's vagueness argument was that the statute prohibited activities that no reasonable person would consider to be criminal. In *Johnson*, as in this case, the defendant relied upon *State v. Sanderson*, 33 Or App 173, 575 P2d 1025 (1978), to support his vagueness argument. In *Sanderson*, we said that the fundamental flaw of the statute at issue was that it "g[ave] no basis to distinguish between anti-social conduct which was intended to be prohibited and socially tolerable conduct

which could not reasonably have been intended to be subject to criminal sanction." 33 Or App at 176-77. In *Johnson*, although we did not expressly state that such an analysis may not be appropriate, we suggested, citing *Robertson*, that it might not. *Johnson*, 59 Or App at 650.

■ We now expressly repudiate the quoted portion of *Sanderson*. First, an argument that a statute covers too much ground can never, standing alone, support a vagueness challenge. As a matter of logic, the conclusion that a law is insufficiently definite to provide guidance to its potential violators and enforcers simply does not follow from the premise that the statute criminalizes too broad a category of conduct. Secondly, such an argument cannot provide the basis for an overbreadth claim, because "[a] legislature can make a law as 'broad' and inclusive as it chooses unless it reaches into constitutionally protected ground." *Blocker*, 291 Or at 261. The sole limit on a statute's breadth is constitutionality, not our second-guessing of what the legislature could or could not have deemed "socially tolerable."

Defendant cites several cases in support of his argument that a statute must require proof of harm to survive a vagueness challenge. None of those cases, however, supports that proposition. To the extent that those cases suggest that proof of harm is necessary to save a statute from unconstitutionality, two of the cases that defendant cites do so in the context of overbreadth challenges based on Article I, section 8, of the Oregon Constitution. *State v. Ray*, 302 Or 595, 599, 733 P2d 28 (1987); *State v. Spencer*, 289 Or 225, 229, 611 P2d 1147 (1980). Defendant does not argue that ORS 164.377(3) is unconstitutionally overbroad because it reaches speech protected by Article I, section 8. In the third case, *State v. Blair*, 287 Or 519, 524, 601 P2d 766 (1979), the Supreme Court did mention harm in a vagueness discussion, but only in the context of suggesting what kind of modification might make other, indefinite wording—in particular the forbidden actions—in the statute at issue sufficiently definite.

■ In this case, a potential violator or enforcer can be reasonably certain what conduct is prohibited by the phrase "alter[ ] * * * any computer [or] computer system." To "alter"

means "to cause to become different in some particular characteristic * * * without changing into something else * * *." *Webster's Third New Int'l Dictionary,* 63 (unabridged ed 1993). In this case, defendant installed gate programs that allowed external access to Intel computers. That conduct clearly changed a particular characteristic of those computers, namely their imperviousness to access from outside the company. "Alter" as used in ORS 164.377(3) is not unconstitutionally vague. *See Chakerian,* 325 Or at 382 (a party who engages in conduct that is clearly proscribed cannot complain that that statute is facially vague).

Similarly, "without authorization" in ORS 164.377(3) provides sufficiently definite notice of the prohibited conduct. In this case, defendant himself acknowledged that installing gate programs was against company policy. He did not argue that, despite company policy, he had obtained permission to install a gate program. Confronted with the phrase "without authorization," a potential violator of ORS 164.377(3) would be reasonably certain that he or she would run afoul of that prohibition by doing something to a computer in violation of the policy of the company that owned the computer without having sought permission for an exception to the policy. The trial court did not err in overruling defendant's demurrer on the ground of vagueness.

Defendant also contends that count one of the indictment was not definite or certain, citing ORS 135.630(6).[4] Defendant's argument concerning the specificity of the indictment repeats his argument concerning the vagueness of ORS 164.377(3). The indictment was sufficiently definite and certain. *See Romig,* 73 Or App at 789 (holding that indictment was sufficiently definite and certain where the defendant's argument merely reiterated unsuccessful vagueness challenge).

In his fourth assignment of error, defendant challenges the trial court's denial of his motion for judgment of

---

[4] A challenge to the definiteness or certainty of an *indictment* is properly raised under ORS 135.630(2). A challenge to the definiteness or certainty of a charging instrument other than an indictment may be raised under ORS 135.630(6). *State v. Wright,* 167 Or App 297, 299 n 1, 999 P2d 1220, *adhered to on recons* 169 Or App 78, 7 P3d 738 (2000); *State v. Morgan,* 151 Or App 750, 753 n 4, 951 P2d 187 (1997).

acquittal on counts two and three of the indictment. In counts two and three, respectively, defendant was charged as follows:

> "That the above named defendant(s) on and between August 1, 1993 and November 1, 1993, in Washington County, Oregon, did unlawfully and knowingly access and use a computer and computer network for the purpose of committing theft of the Intel SSD's password file[.]
>
> "* * * * *
>
> "That the above named defendant(s) on and between October 21, 1993 and October 25, 1993, in Washington County, Oregon, did unlawfully and knowingly access and use a computer and computer system for the purpose of committing theft of the Intel SSD individual user's passwords[.]"

At the close of the state's case, defendant moved for a judgment of acquittal on counts two and three. Defendant argued that, because the state's theory was that he acted with the purpose of committing theft, the state had to prove the elements of the theft statute, ORS 164.015. According to defendant the state had failed, first, to put on evidence that he had taken property and, second, to put on evidence that he had acted with the intent or purpose to commit theft. The trial court denied defendant's motion for a judgment of acquittal. Defendant assigns error to that denial.

ORS 164.377 includes three separately defined crimes:

> "(2) Any person commits computer crime who knowingly accesses, attempts to access or uses, or attempts to use, any computer, computer system, computer network or any part thereof for the purpose of:
>
> "(a) Devising or executing any scheme or artifice to defraud;
>
> "(b) Obtaining money, property or services by means of false or fraudulent pretenses, representations or promises; or
>
> "(c) Committing theft, including, but not limited to, theft of proprietary information.

"(3) Any person who knowingly and without authorization alters, damages or destroys any computer, computer system, computer network, or any computer software, program, documentation or data contained in such computer, computer system or computer network, commits computer crime.

"(4) Any person who knowingly and without authorization uses, accesses or attempts to access any computer, computer system, computer network, or any computer software, program, documentation or data contained in such computer, computer system or computer network, commits computer crime."

Defendant argues, the state concedes, and we agree that the indictment alleged, and the state attempted to prove at trial, only that defendant violated ORS 164.377(2)(c). Accordingly, we review the evidence in the light most favorable to the state to determine whether a rational trier of fact could have found the elements of computer crime as set out in ORS 164.377(2)(c) beyond a reasonable doubt. *See State v. Pierce*, 153 Or App 569, 575, 962 P2d 35, *rev den* 327 Or 448 (1998) (setting out standard of review); *Riggs v. State of Oregon*, 50 Or App 109, 113-14, 622 P2d 327 (1981) (explaining that courts lack jurisdiction to consider crimes, other than lesser-included offenses, not charged in indictment).[5]

The parties do not dispute that the state proved that defendant "knowingly accesse[d] * * * or use[d] * * * any computer, computer system, computer network or any part thereof" as required by ORS 164.377(2)(c). The parties dispute only whether the evidence was sufficient to establish that defendant did so "for the purpose of * * * [c]ommitting theft, including, but not limited to, theft of proprietary information." ORS 164.377(2)(c). To resolve the issue, we construe that statutory wording by first examining the text and context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). Context includes related statutes. *Id.* at 611.

---

[5] The state did not argue to the trial court, and does not argue on appeal, that any other provision of ORS 164.377 is a lesser-included offense of ORS 164.377(2)(c).

ORS 164.377 does not define "theft." However, the legislature has defined "theft" in a related statute, ORS 164.015. *See State v. Thompson,* 166 Or App 370, 377-78, 998 P2d 762, *rev den* 331 Or 192 (2000) (where construction of a statute defining a criminal offense is at issue, pre-existing criminal code is a natural source for context; it is proper to assume legislature was aware of pre-existing meanings of terms when it enacted statutes using those terms); *see also State v. Maney,* 297 Or 620, 625-26 n 7, 688 P2d 63 (1984) (statutes in same chapter of criminal code are more likely to bear on court's construction than are other statutes). ORS 164.015 provides, in part:

"A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:

"(1) Takes, appropriates, obtains or withholds such property from an owner thereof[.]"

"Property" includes "any * * * thing of value." ORS 164.005(5). The parties do not dispute that the password file and individual passwords have value, and there is evidence in the record to support that proposition. The parties dispute, however, whether defendant "t[ook], appropriate[d], obtain[ed] or withh[e]ld" the password file and individual passwords.

Defendant argues that he could not have "taken, appropriated, obtained or withheld" the password file and individual passwords because, even though he moved them to another computer and took them in the sense that he now had them on his computer, the file and passwords remained on Intel's computers after he ran the Crack program. The individual users whose passwords defendant had obtained could still use their passwords just as they had before. Intel continued to "have" everything it did before defendant ran the Crack program and, consequently, defendant reasons, he cannot be said to have "taken" anything away from Intel.

The state responds that, by copying the passwords, defendant stripped them of their value. The state contends that, like proprietary manufacturing formulas, passwords have value only so long as no one else knows what they are.

Once defendant had copied them, the passwords were useless for their only purpose, protecting access to information in the SSD computers. The loss of exclusive possession of the passwords, according to the state, is sufficient to constitute theft.

Under ORS 164.015, theft occurs, among other ways, when a person "takes" the property of another. "Take" is a broad term with an extensive dictionary entry. *Webster's Third New Int'l Dictionary* at 2329-31. Some of the dictionary definitions undermine defendant's argument. The first definition of "take" is "to get into one's hands or into one's possession, power, or control by force or stratagem * * *." *Id.* at 2329. Another definition provides "to adopt or lay hold of for oneself or as one's own * * *." *Id.* at 2330. *Black's* defines "take" to include "[t]o obtain possession or control * * *." *Black's Law Dictionary*, 1466 (7th ed 1999). Those definitions indicate that the term "take" might include more than just the transfer of exclusive possession that defendant proposes. For example, "take" could include obtaining control of property, as defendant did with respect to the passwords and password file by copying them.

Turning back to the text of the statute under which defendant was charged, we note that the legislature contemplated that "theft" as used in ORS 164.377(2)(c) could be exercised upon, among other things, "proprietary information." "Proprietary information" includes "scientific, technical or commercial information * * * that is known only to limited individuals within an organization * * *." ORS 164.377(1)(i). Proprietary information, like the passwords and password files at issue here, is not susceptible to exclusive possession; it is information that, by definition, can be known by more than one person. Nevertheless, the legislature indicated that it could be subject to "theft" under ORS 164.377(2)(c). We conclude that the state presented sufficient evidence to prove that, by copying the passwords and password file, defendant took property of another, namely Intel, and that his actions, therefore, were for the purpose of theft. The trial court did not err in denying defendant's motion for judgment of acquittal on counts two and three.

■ In his fifth assignment of error, defendant challenges several aspects of the trial court's restitution order. Only one

of defendant's arguments requires discussion. He contends that $8,779.45 in attorney fees incurred by Intel should not have been included in the restitution amount that he was required to pay. Under ORS 137.106(1), a trial court may order a convicted criminal defendant to pay restitution of pecuniary damages to the victim of the crime. Defendant argues that the trial court erred in refusing to hear evidence about the amount of the attorney fees to be included in the restitution award, specifically whether it was "reasonable and necessary" for Intel to retain outside counsel to advise it when it could have more cheaply obtained the same advice from its in-house counsel or from the District Attorney. The trial court ruled that defendant's evidence was inadmissible because it was not relevant. We review relevance determinations for errors of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999).

■ The Supreme Court has previously indicated that it is appropriate to ascertain whether incurred attorney fees were necessary before awarding them as damages. *Campbell v. Karb*, 303 Or 592, 599, 740 P2d 750 (1987). Defendant in this case sought to question witnesses to determine if it was necessary for Intel to hire outside counsel. The answers to those question would have been relevant to the question of whether the incurred attorney fees were necessary. The trial court erred in excluding that evidence.[6]

■ Finally, defendant assigns error to the trial court's denial of his motion to merge his convictions on counts two and three. Defendant was charged in both counts with violating ORS 164.377(2)(c). Defendant argued to the trial court and argues on appeal that the "anti-merger" provisions in

---

[6] In the event that the trial court determines that the fees incurred were reasonable and necessary, it will be necessary for the court to consider whether, under the particular circumstances of this case, the fees constitute "pecuniary damages" under ORS 137.106(1). "Pecuniary damages" is defined as "all special damages, but not general damages, which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities * * *." ORS 137.103(2).

ORS 161.067(1) and (3)[7] do not apply. Accordingly, defendant reasons, because those provisions do not apply, he was entitled to merger of his convictions.

ORS 161.067 provides, in part:

"(1) When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations.

"* * * * *

"(3) When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that *each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent.* * * *" (Emphasis added.)

Defendant's convictions for counts 2 and 3 do not merge, because the acts that formed the basis for each violation were separated by a "sufficient pause" in defendant's criminal conduct to afford him the opportunity to renounce criminal intent. As to count 2, the relevant acts were copying the SSD password file onto the Intel computer Wyeth and running the Crack program on it. As to count 3, the relevant act was running the Crack program again on the password file, this time using a faster computer, Snoopy. Defendant himself testified that he expected to gain different, "most interesting" figures by running the Crack program again on Snoopy. The two instances of running the Crack program were separated by several weeks. Several weeks certainly provided a "sufficient pause" to allow defendant to renounce his criminal intent.

---

[7] Defendant cites ORS 161.062, which the legislature repealed in 1999. Or Laws 1999, ch 136, § 1. The anti-merger provisions of ORS 161.067 are nearly identical, however, and ORS 161.067 remains effective. *See generally State v. Lucio-Camargo*, 172 Or App 298, 303 n 4, 18 P3d 467 (2001) (explaining history of the anti-merger statutes); *State v. Sumerlin*, 139 Or App 579, 583 n 4, 913 P2d 340 (1996) (same). We cite ORS 161.067 in this opinion, because the operative wording is the same as the wording defendant relies upon.

The trial court did not err in refusing to merge the convictions.

Restitution order reversed and remanded for reconsideration; otherwise affirmed.